## Steinman *against* Wilkins.

A warehouse-man has a specific, not a general lien; but he may deliver a part, and retain the residue for the price chargeable on all the goods received by him under the same bailment, provided the ownership of the whole is in the same person.

THE plaintiff brought this action of trover against the defendant, who is a warehouse-man in *Clarion* county, on the Allegheny river, for the supposed conversion of certain goods retained for the price of warehouse room, being part of a larger lot which was stored in his warehouse by Hamilton & Humes, of whom the plaintiff is the general assignee. The greater part had been delivered to Hamilton & Humes, and the residue having been demanded without tender of any charges, M'CALMONT (President of the Common Pleas of Clarion county) directed the jury that though the defendant could not retain for the general balance of his account, he might retain for all the charges on all the goods forwarded to him at the same time. A bill of exceptions was sealed, and the point was argued on a writ of error to this court by

*Gilmore*, for plaintiff in error. Cited, 2 *Watts & Serg.* 392; 2 *Bac. Abr.* 186; *Stra.* 556; 5 *Bac. Abr.* 538; 8 *Eng. Com. L. Rep* 51; 15 *Eng. Com. L. Rep.* 426.

*Howe*, for defendant in error, cited 2 *Stephens N. P.* 987; *Cross on Lien* 190; 6 *East* 622; 2 *Kent* 495.

The opinion of the Court was delivered by
GIBSON, C. J.—Though a plurality of the barons in *Rex* v. *Humphrey* (1 *M'Clell. & Y.* 194–5) dissented from the dictum of Baron GRAHAM that a warehouse-man has a lien for a general balance, like a wharfinger, I do not understand them to have intimated that he has no lien at all. They spoke of it as an entity, and seem to have admitted that he has a specific lien, though not a general one. There is a well-known distinction between a commercial lien, which is the creature of usage, and a common-law lien, which is the creature of policy. The first gives a right to retain for a balance of accounts; the second, for services performed in relation to the particular property. Commercial or general liens, which have not been fastened on the law merchant by inveterate usage, are discountenanced by the courts as encroachments on the common law; and for that reason it would be impossible to maintain the position of Baron GRAHAM, for there is no evidence of usage

[Steinman, v. Wilkins.]

as a foundation for it, and no text-writer has treated of warehouse room as a subject of lien in any shape. In *Rex* v. *Humphrey,* it was involved in the discussion only incidentally; and I have met with it in no other case. But there is doubtless a specific lien provided for it by the justice of the common law. From the case of a chattel bailed to acquire additional value by the labour or skill of an artisan, the doctrine of specific lien has been extended to almost every case in which the thing has been improved by the agency of the bailee. Yet, in the recent case of *Jackson* v. *Cummings,* (5 *Mees. & Welsb.* 342), it was held to extend no further than to cases in which the bailee has directly conferred additional value by labour or skill, or indirectly by the instrumentality of an agent under his control; in supposed accordance with which it was ruled that the agistment of cattle gives no lien. But it is difficult to find an argument for the position that a man who fits an ox for the shambles, by fatting it with his provender, does not increase its intrinsic value by means exclusively within his control. There are certainly cases of a different stamp, particularly *Bevan* v. *Waters,* (*Mood. & Malk.* 235), in which a trainer was allowed to retain for fitting a race-horse for the turf. In *Jackson* v. *Cummings* we see the expiring embers of the primitive notion that the basis of the lien is intrinsic improvement of the thing by mechanical means; but if we get away from it at all, what matters it how the additional value has been imparted, or whether it has been attended with an alteration in the condition of the thing? It may be said that the condition of a fat ox is not a permanent one; but neither is the increased value of a mare in foal permanent; yet in *Searfe* v. *Morgan,* (4 *Mees. & Welsb.* 270), the owner of a stallion was allowed to have a lien for the price of the leap. The truth is, the modern decisions evince a struggle of the judicial mind to escape from the narrow confines of the earlier precedents, but without having as yet established principles adapted to the current transactions and convenience of the world. Before *Chase* v. *Westmore,* (5 *Maule & Selw.* 180), there was no lien even for work done under a special agreement; now, it is indifferent whether the price has been fixed or not. In that case, Lord ELLEN-BOROUGH, alluding to the old decisions, said that if they " are not supported by law and reason, the convenience of mankind certainly requires that our decisions should not be governed by them;" and Chief Justice BEST declared in *Jacobs* v. *Latour,* (5 *Bingh.* 132), that the doctrine of lien is so just between debtor and creditor, that it cannot be too much favoured. In *Kirkham* v. *Shawcross,* (6 *T. R.* 17), Lord KENYON said it had been the wish of the courts, in all cases and at all times, to carry the lien of the common law as far as possible; and that Lord MANSFIELD also thought that justice required it, though he submitted when rigid rules of law were against it. What rule forbids the lien of a warehouseman? Lord ELLENBOROUGH thought in *Chase* v. *Westmore,* tha*

[Steinman v. Wilkins.]

every case of the sort was that of a sale of services performed in relation to a chattel, and to be paid for, as in the case of any other sale, when the article should be delivered. Now, a sale of warehouse room presents a case which is bound by no pre-established rule or analogy; and, on the ground of principle, it is not easy to discover why the warehouse-man should not have the same lien for the price of future delivery and intermediate care that a carrier has. The one delivers at a different time, the other at a different place; the one after custody in a warehouse, the other in a vehicle; and that is all the difference. True, the measure of the carrier's responsibility is greater; but that, though a consideration to influence the quantum of his compensation, is not a consideration to increase the number of his securities for it. His lien does not stand on that. He is bound in England by the custom of the realm to carry for all employers at established prices; but it is by no means certain that our ancestors brought the principle with them from the parent country as one suited to their condition in a wilderness. We have no trace of an action for refusing to carry; and it is notorious that the wagoners, who were formerly the carriers between Philadelphia and Pittsburgh, frequently refused to load at the current price. Now, neither the carrier nor the warehouse-man adds a particle to the intrinsic value of the thing. The one delivers at the place, and the other at the time, that suits the interest or the convenience of the owner of it, in whose estimation it receives an increase of its relative value from the services rendered in respect of it, else he would not have undertaken to pay for them. I take it, then, that, in regard to lien, a warehouse-man stands on a footing with a carrier, whom in this country he closely resembles.

Now, it is clear from *Sodergren* v. *Flight & Jennings*, cited 6 *East* 662, that where the ownership is entire in the consignee, or a purchaser from him, each parcel of the goods is bound, not only for its particular proportion, but for the whole, provided the whole has been carried under one contract; it is otherwise where to charge a part for the whole would subject a purchaser to answer for the goods of another, delivered by the bailee with knowledge of the circumstances. In this instance, the entire interest was in Hamilton & Humes, in whose right the plaintiff sues; and the principle laid down by the presiding Judge was substantially right. On the other hand, the full benefit of it was not given to the defendant in charging that the demand and refusal was evidence of conversion. There was no evidence of tender to make the detention wrongful; and the defendant would have had cause to complain, had the verdict been against him, of the direction to deduct the entire price of the storage from the value of the articles returned, and to find for the plaintiff a sum equal to the difference. But there has been no error which the plaintiff can assign.

Judgment affirmed.