Miller *v*. Lewis.

## MILLER *vs*. LEWIS and PERRIN.

An agreement, made upon sufficient consideration, between a judgment debtor whose land has been sold on execution, and the purchaser, enlarging the time within which the debtor may redeem or extinguish the lien acquired by the sale, is valid.

And such agreement will affect other parties, so that a creditor by judgment obtained subsequently, but within fifteen months from the sale, can not redeem or acquire the purchaser's interest under the statute.

Accordingly, where the purchaser of land sold under execution, executed soon after the sale a covenant to the judgment debtor engaging not to perfect title under the sale within three years, and that at the expiration of that period he would release and discharge all his interest acquired by the sale, on being paid the amount of his bid with annual interest at seven per cent, and another creditor afterwards, but within fifteen months from the sale, obtained judgment and then redeemed under the statute and got the sheriff's deed, after which, but within the three years, the judgment debtor paid up the purchaser according to the covenant, *held*, that the redemption by the junior creditor was good for nothing, and that he acquired no title by the sheriff's deed.

A junior judgment creditor, it seems, can only acquire the interest which the purchaser at sheriff's sale takes under *the statute*, and not an interest created by agreement between the debtor and the purchaser modifying the statutory rights of the parties.

Miller v. Lewis.

[555] A purchaser of land at sheriff's sale may, it seems, release his interest altogether, or make any other agreement in good faith, respecting it with the debtor, without the consent of junior judgment creditors, and so as to defeat a redemption by them.

In the absence of fraud a debtor's contract binds all his creditors, existing or subsequent, who have not acquired a lien on the property affected by such contract.

A deputy county clerk has authority, in the absence of the clerk, to certify a copy of the docket of a judgment, and the certificate is good, although it does not show on its face the absence of the clerk. *Per* JEWETT, J.

A deputy clerk is a public officer, and the law in such a case will presume that the clerk was absent or incapable of attending to the duties of his office. *Per* JEWETT, J.

A certified copy of the docket of a judgment, procured for the purpose of redeeming from a sheriff's sale of real estate, will be held good, although the certificate does not state that the clerk has compared the copy with the original, and that it is a correct transcript therefrom, and of the whole of such original. *Per* JEWETT, J.

THIS was an appeal from the decree of the supreme court in the seventh district, dismissing the bill of the complainant without costs. The case presented by the pleadings and proofs, so far as material to the questions decided, was as follows : Prior to September, 1845, the complainant was the owner in fee of certain real estate in the town of Henrietta and city of Rochester, the last known as the "American Hotel" property. His interest was one undivided half, in the Rochester property, the other moiety being owned by the defendant Perrin, A. Hubbell and John Burns as tenants in common. On the 16th of September, 1845, the right of Miller was · sold by the sheriff upon execution issued upon judgments theretofore obtained against him, for the sum of $334, being about the amount then due upon the judgments, costs and interest included, to the above named Hubbell, to whom a certificate was duly executed by the sheriff.

Immediately after the sale a negotiation commenced between the complainant, of the one part, and Perrin, Hubbell and Burns of the other, for the sale by the persons last mentioned, of their moiety of the hotel property to Miller, in which all the parties participated. The complainant insisted, as a condition of the purchase, upon the arrangement subsequently made and [556] embraced in the covenant of Hubbell hereafter men-

tioned. This was fully understood by Perrin, who aided personally in bringing it about.

The arrangement was finally consummated on the 25th of September, by the acceptance of the proposition of Miller, by a conveyance in fee to him by Perrin, Hubbell and Burns, of their interest in the property, by the execution, on the part of Hubbell, of the covenant subsequently stated, and by the execution of a bond and mortgage for $3000, to each of the venders separately; the whole purchase amounting to $9000. Each mortgage included the whole property, the half purchased as well as the moiety owned by the complainant. The following is the covenant referred to, omitting the description of the premises:

"Whereas, I, Alfred Hubbell, have recently become pur-chaser at a sale made by the sheriff of Monroe county, of certain real estate belonging to Andrew Miller, of the city of Rochester—being the undivided half of, (describing the premises,) and whereas said Miller has this day purchased my share or interest in said premises—in consideration of the purchase so made of me, by said Miller, I agree to execute the covenants herein contained. Now, therefore, I do hereby covenant and agree to and with said Miller, that I will not perfect any title to the premises aforesaid, pursuant to the sale aforesaid, *until the expiration of three years from the date hereof;* and that in case the said Miller shall, *at the expiration of the time* last *aforesaid,* pay to *me* or my *personal representatives,* the amount bid by me at the sheriff's sale aforesaid, with the interest thereon, then I will release and discharge the premises aforesaid, of and from all claim which shall have accrued by reason of the sheriff's sale aforesaid—the interest on the aforesaid sum to be paid *annually* on the first day of October. Dated, September 25th, 1845. ALFRED HUBBELL. [L. S.]"

When this covenant was executed, it did not appear that the complainant was indebted to any person, or that there were any liens except that of Hubbell upon his property.

Subsequently Perrin commenced a suit in assumpsit against the complainant, in which a relicta was given and judg- [557]

ment perfected on the 29th of August, 1846, with a stipulation for a stay of execution for six months. The relicta was given by the son and agent of the complainant, or by his directions, the father having been, from the time of the sale above mentioned, a resident of Canada. It was given under the assurance of Perrin, that he wanted the judgment as security, and that he would make no trouble. On the last day of the 15th month from the sheriff's sale, Perrin assigned the judgment to Lewis, the other defendant, who, on the same day, went to the sheriff's office where he was shown the covenant of Hubbell, which had been left with the sheriff and attached to the certificate. He then paid the amount of the bid of Hubbell with interest, demanded and received a deed of the premises from the sheriff. There was evidence tending to prove, and which the court thought did prove, notice to Lewis of the agreement of the 25th September, prior to the assignment to him of the judgment, and that such assignment, as well as the subsequent redemption, were for the benefit of Perrin. The leading facts on this point are stated in the opinion of Gardiner, J.

The bill alledged fraud in procuring the judgment, and that the redemption was irregular, but as the decision was placed on other grounds, the evidence upon those points need not be stated. On the 27th of January, 1848, Miller paid to Hubbell the amount specified in the covenant, and the latter released all his claim upon the premises to the complainant. Shortly afterwards a quit-claim deed for the premises conveyed by the sheriff, was tendered to Lewis, with a request that he would execute it with his wife, which was refused. It appeared that the complainant, at the time Perrin obtained his judgment, was in possession as owner of a considerable amount of personal property, and of real estate in Rochester, other than the property redeemed, valued by witnesses at $16,000. The bill prayed that Lewis and wife might release, &c. and for general relief. The cause was heard on pleadings and proofs, at a general term in 1849, and a decree made dismissing the bill, from which the complainant appealed to this court.

Miller *v.* Lewis.

—— *Miller*, for appellant.                           [558]

*N. Hill, Jr.* for respondents.

GARDINER, J. delivered the opinion of the court.

The agreement executed by Hubbell on the 25th of September, authorized Miller to extinguish the lien upon the premises, for the purchase money, by the payment of the amount bid, at the end of three years, with annual interest, at the rate of seven per cent; and the judgment debtor was concluded by his acceptance of the covenants, from claiming or exercising the right of payment or redemption, before that period. The language of the instrument is, that " in case said Miller should at the *expiration* of the term last aforesaid, pay to Hubbell or his representative the amount of the bid," &c. In a word, the amount of the purchase money paid at the sale was converted into an investment for three years, with annual interest, irredeemable by the debtor until the expiration of that period. These, it is hardly necessary to say, were not the rights secured to the judgment debtor by the statute; nor was this the interest in the land acquired by the purchaser, by virtue of the sale made by the sheriff. (2 *R. S.* 371, §§ 45, 51.) But the latter is the only interest which the legislature have authorized a junior judgment creditor to demand or acquire. The act provides that if the persons entitled to redeem within the year, shall omit so to do, " then *the interest* vested in the purchaser *by such sale,* may be acquired by any creditor whose judgment is a lien upon the land, within three months thereafter." (2 *R. S.* 372, § 50.) The statute has no application where the interest vested by the sale is changed, by an agreement between the purchaser and owner of the fee. The creditor is in such case left to his common law remedy, by sale or redemption, if the substituted interest is redeemable.

It was said that " this agreement neither extinguished the lien acquired by the sale, nor altered the nature of it." When it can be shown that an interest in land, defeasible upon the payment of a sum of money, with ten per cent interest, at any

time within the year, is the same with one defeasible on the [559] payment of the same sum, at the expiration of three years, with annual interest at seven per cent, I shall assent to the proposition. It is true, they are both liens to secure the payment of money; but for different sums and for different periods. They are not liens of the same nature; for one depends upon the statute, the other on contract. If the certificate of sale had been altered so as to conform to the agreement of the 25th of September, it would have been utterly void as a statute security. If the parties had indorsed upon the instrument thus changed, an express agreement, that the sheriff should convey according to its terms; they could not enlarge the official obligations of the officer by this stipulation, or bind him to convey the land, at the end of three, any more than after a lapse of twenty years, or within six months of the sale. (2 R. S. 374, §§ 62, 63.) If the sheriff, in either case, voluntarily executed a deed, he would act as the agent of the parties, and its validity would rest exclusively upon their agreement. If he refused, the lien could only be enforced in equity. The relief, therefore, sought by the complainant involves the determination of two questions: 1st. Was the agreement of the 25th of September valid, between the parties? and if so, was it obligatory upon creditors of Miller having notice of the contract, who subsequently acquired liens by judgment upon the premises? The first proposition was affirmed by the supreme court in their decision, admitted by the counsel of the defendants; and will, it is presumed, be denied by no one. If true, it will be found in this case decisive of the second question above suggested. The general rule, undoubtedly is, that any person may for a valuable consideration, in good faith, dispose of any right or interest in, or pertaining to his real estate, at pleasure; and that his contracts will bind all his creditors, existing or subsequent, who have not obtained liens upon the property. They claim through the debtor, and of course subject to his bona fide contracts. The principle is sufficiently obvious without an authority, but it was distinctly affirmed by this court in Candee v. Lord (2 Comst. 269; Cowen & Hill's Notes, 1436.) The honesty of the

agreement under consideration is not controverted by the defendants. Indeed, there were no creditors to be defrauded [560] by judgment or otherwise, when it was made.

If then Perrin, who became a creditor of the complainant and obtained a lien subsequent to this arrangement, is not concluded by it, it must be because the statute confers upon him the right to acquire the interest sold by the sheriff, irrespective of any arrangement between the purchaser and the owner of the premises. The statute to which we are referred, contains no prohibition against any bona fide contract between the purchaser and the debtor, in relation to their respective interests in the property sold; nor does it expressly, or by implication, confer upon the redeeming creditor the right to overreach and annul a contract, valid between the parties, and to acquire an interest which neither the debtor nor the original purchaser possessed, when the judgment became a lien.

In *Ex parte Peru Iron Co.* (7 *Cowen*, 540,) it was said that " one having purchased land at a sheriff's sale, acquired a mere lien, which he might *discharge* or *release* without the *consent* of a junior judgment creditor." And in the *Bank of Vergennes* v. *Warren*, that " the original purchaser may part with his interest in the land upon such terms as he deems proper." (7 *Hill*, 93.) Now every change of the lien of a purchaser is a relinquishment of the original interest conferred by the sale, to the extent of the change. According to the authorities, he may release *all* his interest and thus defeat a redemption by a judgment creditor. I see no reason why he may not substantially modify it by contract with the debtor, although the same consequence ensues.

Again, the right of redemption insisted upon by the defendants is irreconcilable with the language and spirit of the statute. The law confers the privilege of " acquiring the *interest* vested in the purchaser by such sale," upon " creditors having judgments that are a *lien* upon the premises sold." (§§ 50, 51, 55, *supra.*) The right is *stricti juris.* (20 *Wend.* 538, 561.) The continuance of the interest vested by the sale is pre-supposed, and is just as indispensable to the exercise of the right as the lien of the judgment. They must co-exist. But so long as the

[561] interest obtained by Hubbell by the sheriff's sale *substituted*, there was neither creditor nor judgment. And when there was a judgment creditor and *lien*, the interest had ceased. (§ 59, *last clause*.)

" The object of our statutes," as remarked judges of our courts, " was to prevent the sacrifice of the debtor's property and to make the land bring its utmost value, by means of an auction among creditors. (7 *Cowen*, 343 ; 4 *Denio*, 144.) But according to its provisions the action can not commence until the debtor's rights are foreclosed. (§§ 50, 56.) When he suffers the period allotted to him exclusively for redemption, to expire, and thus demonstrates his inability to preserve the property for *himself*, creditors may consider it as offered by law to the highest bidder. Here, however, the debtor by contract secured the land to his own use for three years, with the right then to extinguish the only lien upon it. The arrangement left the residue of his real estate unincumbered, and subjected this part of it to the claims of his creditors, fifteen months beyond the period limited by statute.

This contract, we are informed, although obligatory upon the parties, can not affect *any* redeeming creditor ; that the statute provision, " that he may acquire all the *rights* of the original purchaser," gives him a vested right to pay a debt which the purchaser could not exact from the debtor, and to acquire an interest in land which the former had relinquished for a valuable consideration. We do not so construe the law. We see nothing in its provisions to revive an interest that has once been extinguished by the act of the purchaser. It follows that Hubbell, from the 25th of September, when his covenant was executed and delivered, had no interest in the premises which could be acquired by statute redemption.

What has been suggested renders it unnecessary to determine whether Perrin was estopped, by the agreement of the 25th of September, from redeeming. He was not a party to the covenant executed by Hubbell, but it would not be difficult to prove that he was a party to the agreement, of which that covenant was a part execution. The proposition of the complainant to pur-

chase the moiety of the premises owned by Perrin, Burns and Hubbell, including the stipulation subsequently given by [562] the latter. The sale was made, and the mortgage given and accepted in pursuance of that proposition. After participating in the advantages of the sale and soliciting the execution of the covenant by which Miller precluded himself from redeeming under the statute, it would seem that Perrin was not at liberty to invalidate the contract as judgment creditor, and by the same act deprive his vendee of his property, and his co-vendors of their security.

If Perrin could not redeem, the only remaining question is, whether Lewis, as his assignee, was in any better condition. It is unnecessary to inquire, whether he was bound by the equities affecting the assignor; for the case shows that he was assignee in form only. Perrin deposes "that he found obstacles in the way of redeeming in his own name." And this is the only satisfactory reason, to be gathered from the evidence, for the assignment. Lewis had express notice of the agreement of Hubbell, which was attached to the certificate, and placed in his hands by the sheriff. In addition it is shown, that a few days before the expiration of the fifteen months, the necessary papers for the redemption were prepared by the procurement of Perrin, by his counsel; that he subsequently requested Lewis to purchase the judgment; that on the day of the redemption, Lewis, who resided in the country, met him by arrangement; that the assignment was executed, and the money paid at the office of the same counsel; that on that day Perrin drew $400 from the bank, and he testifies "that he might have lent Lewis his check." These facts strongly indicate that the assignment was for his benefit. But there is another which is decisive. He was a man of wealth, his judgment was secure beyond a contingency, and he himself was one of the mortgagees of the premises to be redeemed. Under these circumstances, he solicits Lewis, "with whom he was on intimate and confidential terms," to purchase the judgment; stands by when the redeeming papers were prepared; which the moment they were used, would in all probability ruin Miller, and take from himself, and his associates, real estate

[563] valued at nine thousand dollars, upon which their respective mortgages were liens. It is impossible to doubt the real object of the transaction. It is not to be presumed that he would aid in the consummation of a project, which the public might deem oppressive, and his co-mortgagees dishonorable, gratuitously; certainly not at a serious and known sacrifice of his own interest.

We think the necessary conclusion is, that Lewis was a mere trustee for Perrin, standing in his place, and succeeding to his rights, as against the complainant. That consequently the redemption attempted by him was inoperative and void, for the reasons suggested. The decree of the supreme court must be reversed.

JEWETT, J. (dissenting.) It can not be denied but that it was competent for Hubbell and Miller, as between themselves, at any time after the sale made by the sheriff, to make any contract which they might deem proper, postponing, varying, or wholly releasing the rights of Hubbell as such purchaser, given by the statute. But unless such agreement should be made within a year after the sale, and had the effect of a *redemption* by Miller, it could not *affect* the right of any other creditor of Miller who should, within the fifteen months, recover a judgment against him, being a lien upon the premises, to redeem from Hubbell as such purchaser under the provisions of the statute. (2 *R. S.* 371, § 51.) As between the judgment debtor and any other person who should become his creditor by judgment, &c. within the fifteen months, a *redemption* within the year after the sale, by the debtor, &c. is the only mode prescribed by law to prevent the interest which vested in the purchaser by the sale from being *acquired* within three months after the expiration of such year by any other creditor of the judgment debtor, (having a judgment, &c. being a lien upon the premises,) by paying to the purchaser the sum of money which he paid on such sale, with interest. (2 *R. S.* 370, §§ 45, 49—51.) Sections 45, 46, 49 and 50 provide that the judgment debtor, &c. within one year from the time when such sale shall have been made, may *redeem* the sale by the *payment* to the purchaser, &c. of the sum of money

Miller *v.* Lewis.

which was bid on the sale with interest on such sum from [564] the time of sale, at the rate of ten per cent a year. And upon such payment being made by any person so entitled to redeem any real estate so sold, the sale of the premises so redeemed, and the certificates of such sale, shall be null and void. And in case the persons so entitled shall omit to *redeem* the premises so sold, or any part of them, within the year before prescribed, then the interest vested in the purchaser by such sale may be acquired within three months after the expiration of such year, by the persons and on the terms thereinafter prescribed.

It was no doubt competent for Miller, by an agreement with Hubbell during the year, to *redeem* the sale by other means than the actual payment in money of the sum bid on the sale with interest, as prescribed by the statute. But in order to have the effect of a *redemption*, whatever the parties should agree upon as a substitute for actual payment, must be agreed and intended to be given and received as *payment* or *satisfaction* of the sum bid with interest, so that as well the sale as the certificates of sale would become void thereby. No agreement between Miller and Hubbell, in respect to the rights of either variant from such as prescribed by law, under the sale, leaving the sale and certificates of sale in force for any purpose as such, could have the effect to divest any of Miller's judgment creditors, who would otherwise have a right to redeem from Hubbell, within three months after the expiration of a year from the sale, of such right; for it depends not upon the volition of the debtor or purchaser to be exerted in any other manner than by a *redemption* of the sale, but rests upon the statute and can not be defeated otherwise than by a compliance with its provisions.

It can not admit of a doubt, but that if there had been no redemption by Lewis or any other judgment creditor of Miller, within the time prescribed by the statute, and Miller had omitted to pay to Hubbell the amount bid by him with interest annually, within or at the expiration of three years from the time of the sale, that Hubbell would have had the right to take a deed from the sheriff, as such, for the conveyance of the premises to him pursuant to his purchase, by which he would have ac-

[565] quired all the title and interest which Miller had in the premises on the day of the docket of the judgments under which the sale was made, or which he had afterwards and prior to the sale acquired; notwithstanding his covenant with Miller; for the reason that his purchase would not have been redeemed, discharged or relinquished. Thus circumstanced, Lewis could not have availed himself of the lien which he had by his judgment upon the premises in any other way than by redeeming as he did, without incurring the hazard of wholly losing it, by Miller's omitting to pay Hubbell within the terms of his covenant. If instead of redeeming he had procured the premises to be sold under an execution upon his judgment, and had become the purchaser, and after the expiration of fifteen months, no redemption having been made, had taken a deed from the sheriff for the conveyance of them to him, his title might have been defeated subsequently by the failure of Miller to pay Hubbell, by a deed from the sheriff to Hubbell for the conveyance of the premises to him pursuant to his purchase.

If the agreement or covenant of Hubbell with Miller of the 25th of September, 1845, be construed according to its sense and meaning, as collected from its terms, understood in their plain, ordinary and popular sense, there is no room to say that it is a mortgage, or in the nature of a mortgage, or that it amounted to a redemption of the sale, or as evidence of it. It carefully avoids any change of the legal effect of the sale made by the sheriff to Hubbell, except to extend to Miller a right, so far as Hubbell could, as such purchaser, control it, to redeem the sale from him until the expiration of three years from the day of sale, by paying to him the sum bid by him with annual interest, and covenanting in the meantime to refrain from perfecting his title to the premises as purchaser, pursuant to the sale; and upon the condition that Miller paid him the amount bid by him with annual interest at the expiration of said three years, then to release and discharge the premises from all claim which he had acquired by reason of said sale.

Neither Miller or Hubbell had the power, as I have before remarked, if disposed to do so, to cut off or affect the right of

any judgment creditor of Miller to redeem from Hubbell [566] and thereby acquire his interest as a purchaser, within three months after the expiration of a year subsequent to the sale, except by a *redemption* being made pursuant to the provisions of the statute, within the year.

In respect to the ground taken, that the redemption made by Lewis is void, because Perrin recovered his judgment against Miller fraudulently, it is sufficient to remark that it is wholly unsupported by the evidence in the case.

As to the remaining ground insisted on by the complainant, that the papers produced to the sheriff by Lewis as evidence of his right to redeem were defective, it is proper to say, that the right of redemption can not be successfully asserted by a judgment creditor, unless he complies substantially with the requisites prescribed by the statute. ( *Van Rensselaer* v. *The Sheriff of Albany,* 1 *Cowen,* 510 ; *Walker* v. *Harris,* 20 *Wend.* 555 ; *The People* v. *The Sheriff of Broome,* 19 *id.* 87 ; *The People* v. *Ransom,* 2 *Hill,* 51.)

It is alledged in the bill and admitted by the answer, that on or about the seventh day of October, 1845, Perrin commenced a suit against Miller in the court of common pleas of Monroe county, in an action of assumpsit, and that such proceedings were had therein, that afterwards, on the eighth day of September, 1846, he recovered a judgment therein against Miller in said court for $171,60 damages and $36,68 costs, and that the same was on that day docketed in the office of the clerk of said county, and that Lewis, on the 15th day of December, 1846, in order to entitle himself to acquire the title of Hubbell to the premises mentioned, produced to and left with the said sheriff, who made the sale, as evidence of his right, a paper purporting to be a copy of the docket of said judgment recovered by said Perrin, certified in the manner following :

"Monroe common pleas. Darius Perrin *v.* Andrew Miller. Damages, $171,60 ; costs, $36,68. Docketed, September 8, 1846, at 10, A. M. L. Farrar, attorney.

"State of New-York, Monroe county, ss. Clerk's office, Rochester, December 10, 1846. I certify the preceding is a true

[567] copy of the docket of an original record of a judgment on file in this office. In testimony whereof, I have hereunto set my hand and affixed the seal of the court of common pleas of said county, this 10th day of December, 1846.

[L. S.]                    S. A. LEACH, deputy clerk."

It is objected, first, that this certificate does not correctly set forth the name or style of the court in which the judgment was rendered; in other words, that there is no such court as the "Monroe common pleas;" second, that the certificate does not show against whom the judgment was rendered; and third, that the docket is not certified by the clerk of the court, but by S. A. Leach; and if a deputy clerk was competent to certify, it did not appear that he was such deputy, or that the clerk was absent when the certificate was made. The two first objections do not require a particular notice. They are clearly not well taken.

As to the other objection, it is made necessary by 2 *R. S.* 373, *sub.* 1 *of* § 60, that a copy of the docket of the judgment, &c. be " duly certified by the clerk of the *court*, or of the *county* in which the same is docketed." By 2 *R. S.* 210, § 14, clerks of the several counties (except the city and county of New-York,) were made clerks of the courts of common pleas and general sessions of their respective counties. By 1 *R. S.* 376, § 56, every county clerk is required to appoint some proper person deputy clerk of his county, and by § 58, and the laws of 1831, p. 279, § 1, it is provided that whenever the county clerk shall be absent from the county or from *his office*, &c. his deputy may perform all the duties appertaining to the office of clerk of the county, except that of deciding upon the sufficiency of sureties for any office. These references show that the deputy clerk of the county of Monroe was vested with complete authority to certify a copy of the docket, in the absence of the clerk from his office, &c. The certificate purports to have been signed by the deputy of the clerk, attested by affixing the seal of the court of common pleas of Monroe county.

The deputy is a public officer acting under his official oath, and the law will presume that the clerk was either absent from

his office, or incapable of performing the duties of his office at the time the deputy signed the certificate. The certificate [568] is *prima facie* evidence as well that the deputy signed it, as of his authority to act. (*Cowen & Hill's Notes*, 1247 *to* 1250; *Downing* v. *Ruger*, 21 *Wend.* 178; *Thurman* v. *Cameron*, 24 *Wend.* 87.)

It is also objected that the certificate is defective, because it does not certify that the copy had been " compared [by the clerk] with the original, and was a correct transcript therefrom and of the whole of such original." It is a sufficient answer to this objection to say, that in *The People* v. *Ransom*, (4 *Denio*, 145,) affirmed in this court (2 *Comst.* 490,) it was expressly adjudged that such objection could not be sustained. Upon the whole, I am of opinion that the decree of the court below should be affirmed.

BRONSON, Ch. J. concurred in that opinion.

Decree reversed.