*Court of Common Pleas, Dauphin County, February 12th, 1866.*

### HOOVER v. EPLER.

A groom has no lien for his wages upon the horses he attends upon; but if he is obliged to find food for them, or to pay or give his note for claims for boarding them, he has a lien upon them for that amount.

BY THE COURT.—The stated case shows that the defendant was hired by the plaintiff to take care of his stallion for a certain period of time. If the case turned solely on the contract of hiring, the defendant would clearly have no lien on the property for his wages. So far as relates to the hiring, he is in no other situation than a bare hired servant. A lien is the right in one man to retain that which is in his possession belonging to another till certain demands of him, the person in possession, are satisfied (2 East, 227). This is called a *particular lien*, and is favored in the law. The person is allowed to retain in respect of labor or money expended on such goods (2 Livermore on Agency, 35). But to give this right the article claimed must be bailed to the

claimant to have something done to it by which the value will be increased, or labor or services bestowed upon the article bailed by the bailee (Cross on Lien, 34 Law Lib., pp. 24–5). If a man is hired to drive the team of another, the hireling would not be the bailee of the team, although by his labor in grooming and feeding the horses he would increase their value. But if a horse were delivered to a farrier to be cured of a disease, or to be shod, a lien would exist for the attention or labor. So where delivered to a trainer to be prepared for racing (Bevan *v.* Waters, 3 Car. and Payne, 520). It has been held in England that the agister of cattle has no lien, but that case was decided as to milch kine, which were taken daily from the field to the house of the owner to be milked. From the nature of the lien, it would be destroyed by the daily restoration to the owner. I have no doubt that the rule would be otherwise in the case of cattle placed with a farmer to be fattened. See the opinion of Gibson, Chief Justice, in Stineman *v.* Wilkins (7 W. & S. 467). Livery stable keepers had no lien from the same reason, the owner having the daily right to reclaim his horse for use. That is remedied in this State by statute. By the contract between these parties the horse is not delivered to the defendant to be kept groomed, etc., but the defendant is *hired as a groom* to keep the horse, and bound to obey all directions of the owner, who could take the horse out of the care of his groom the day after delivery, or at any other time, though the groom would be entitled to recover full wages to the end of the time for which he was hired. The hired groom had no greater lien or right of retention for his wages than would the hired driver of a carriage who remained under the control of the owner.

There are, however, other grounds of lien here. By the terms of the advertisement, made part of the case, this horse was to stand a portion of his time at the stable of David Smith, in Lebanon county. The owner failed to pay the charges of the landlord against the horse for keeping, and the groom, in order to perform his duty towards the horse and his employer, and comply with the other appointments designated in the advertisement, had to give his note to the innkeeper for the bill, amounting to thirty-one dollars. For this bill the landlord had a lien on the horse; and I am of the opinion that the defendant would be substituted to his rights, and entitled to retain possession of the property until repaid that sum. I am also of the opinion that Epler would have a lien for the feed furnished by himself to the horse, unless the owner supplied the same in sufficient quantities, as it is clear that the provender was not to be found by the groom, but by the owner. There is nothing in the contract which would indicate that the former was to furnish the feed; and had such been the case it might change the whole nature of

[The Commonwealth ex rel. Zoll *v.* Killinger.]

the bargain, and show that Epler should have a lien; it would then be in the nature of a bailment. Had the plaintiff in this case called on the defendant and demanded his property, and the latter had refused to restore it until paid his hundred dollars, it would have come within that class of cases where the bailee set up an improper claim, which would have debarred him from holding for that which was legal (see Boardman *v.* Sill, 1 Camp. N. P. Rep. 410, note; 5 Taunton, 763; 2 Livermore on Agency, 104–5). Had Hoover offered to pay for the feed and the charge of David Smith, Epler would have had no right of detention. But we consider it very clear that so long as the lien remained unsatisfied Hoover could not maintain replevin for the horse; he could not even sustain an action of trover (see Livermore, p. 104, and the authorities there cited). We therefore render judgment in favor of the defendant on the case stated, subject to the agreement of the parties as to the amount to be paid in lieu of a judgment *de retorno habendo.*

AFFIRMED BY THE SUPREME COURT (2 P. F. S. 522).

*Mumma, for plaintiff.*

*Alricks, for defendant.*