THEODORE L. DE VINNE *et al.*, Respondents, *against* THOMAS
M. RIANHARD, RECEIVER, &c., IMPLEADED, Appellant.

(Decided December 6th, 1880.)

The type used for printing a publication, of which new editions were issued
semi-annually, was owned by the corporation which issued the publica-
tion, but remained in the possession of the plaintiffs, who printed the
successive editions. After each edition was printed, the type was not
distributed, but was left standing as it had been set up in pages, and
alterations were made in it when required for the changes to be made in the
next edition. *Held*, that as the value of the type, as such, was not
enhanced by the work done, no lien could be acquired therefor on the type
except by special contract.

One of the plaintiffs testified that he had stated, in conversation with one of
the members of the corporation, that by the arrangement then existing,
the plaintiffs held the type in their possession for their security. *Held*,
that although the claim was not controverted or disputed by that
member, this would not amount to an acquiescence or admission on the
part of the corporation that a contract existed between it and the plaint-
iffs to that effect. Nor would the corporation, by allowing the plaintiffs
to go on with the work after such statement, be estopped from afterwards
setting up that they had no lien on the type for their work; especially as,
by the manufacturing companies act of 1848 and its amendments, under
which the corporation was created, it was forbidden to give such a
lien.

APPEAL from a judgment of this court entered on the
report of a referee.

The action was brought to foreclose a lien claimed by the
plaintiffs upon certain type, for printing and other work done
by them for the defendants, the owners of the type. The
plaintiffs were printers, and had for many years printed for
the defendant, the McKillop & Sprague Company, of which
the defendant Rianhard had been appointed receiver, a com-
mercial register, published semi-annually, giving the financial
standing of merchants throughout the United States. The
company had purchased a large quantity of type for printing
its register, the greater portion of which was usually left
standing as set up in pages for the issue of each edition of the

book until the time came for printing the next edition, when the practice was, instead of setting up the type anew, to merely make such corrections and changes as might be rendered necessary by changes in the matters to be published.

The action was referred by consent, and upon trial the referee found for the plaintiffs. His report was confirmed; and judgment thereon was directed for the plaintiffs. From the judgment the defendant Rianhard appealed.

*J. Henry Work* and *Roger Foster*, for appellant.—The plaintiffs have no lien upon this property by contract, express or implied. The contract between the parties was in writing, in the shape of a proposition signed by one party and verbally assented to by the other, by which preceding conversations were rendered of no effect (*Hinckley* v. *New York Central, &c. R. R. Co.*, 56 N. Y. 429; *Mallory* v. *Tioga R. R. Co.*, 3 Keyes, 356; 3 Abb. Ct. of App. Dec. 139). The conversation did not create a lien on the property (*Hunt* v. *Rousmaniere*, 1 Pet. 1; Pollock on Contracts, 1st Eng. ed. 474; *Smith* v. *Hughes*, L. R. 6 Q. B. 597). The property in question is that of a corporation organized under the act for the formation of companies for manufacturing, &c., purposes, and no mortgage or lien could be put upon it by means of conversation with one of its officers (*Vail* v. *Hamilton*, 20 Hun, 355; 2 R. S. 6th ed. 501). No one can do by estoppel what he cannot do by deed (*McKoon* v. *Smith*, 3 Hill, 147; *Spencer* v. *Karr*, 45 N. Y. 406).

The plaintiffs had no lien upon the type for the value of materials furnished and work done for the company in bookbinding, &c. The only foundation for such a claim would be a general lien by usage (*Bleaden* v. *Hancock*, Mood. & M. 465), or a special contract, neither of which existed.

No special lien, such as is implied by law in favor of the artisan, existed here. To support an artisan's lien it must appear that he has permanently increased the value of the article upon which his labor has been performed and upon which he claims his lien (*Green* v. *Farmer*, Wm. Blackst. 652; *Ex parte Ockenden*, 1 Atk. 235; *Scarfe* v. *Morgan*, 4 Mees. &

W. 270; *Jackson* v. *Cummins*, 5 Mees. & W. 341; *Grinnell* v. *Cook*, 3 Hill, 485, 491).

No artisan's lien can exist here for the further reason that the work was done upon credit. As a general proposition, there can be no lien where credit is given (3 Parsons Contracts, 348; 2 Kent Comm. 635). This doctrine has been in force since the origin of liens. It is found in the Roman law (Inst. Lib. 2, tit. 2, § 41). It is found in the year books (5 Ed. V. 1, 2 *b*, E. T.). It has prevailed to the present day (*Raitt* v. *Mitchell*, 4 Camp. 146; *Cowell* v. *Simpson*, 16 Vesey, 275; *Hewison* v. *Guthrie*, 3 Scott, 298; 2 Bing. N. C. 755; 2 Hodges, 51; *Mason* v. *Morley*, 34 Beav. 471; *Cummings* v. *Harris*, 3 Vt. 244; *Hutchins* v. *Olcutt*, 4 Vt. 549, 551; *Stoddard Woolen Man'y* v. *Huntley*, 8 N. H. 441; *Moore* v. *Hitchcock*, 4 Wend. 292; *Hodgdon* v. *Waldron*, 9 N. H. 67; *Brown* v. *Gilman*, 4 Wheat. 255; *Trust* v. *Pirsson*, 1 Hilt. 292; *Fieldings* v. *Mills*, 2 Bosw. 489).

*Thomas Allison*, for respondents.—Proof was admissible that the plaintiff's letter did not embody the whole agreement, and that it was also agreed that, as security for the indebtedness to be incurred, plaintiffs were to have a lien on the type in their possession (*Chapin* v. *Dobson*, 78 N. Y. 74; *French* v. *Carhart*, 1 N. Y. 96, 102; *Blossom* v. *Griffin*, 13 N. Y. 569; *Hutchins* v. *Hebbard*, 34 N. Y. 24; *Barney* v. *Worthington*, 37 N. Y. 112, 115; *Griffiths* v. *Hardenbergh*, 41 N. Y. 464; *Grierson* v. *Mason*, 60 N. Y. 394). The finding of the referee that there was an understanding and agreement between plaintiffs and the company that the pages of type should be held and retained in the possession of plaintiffs as security for all the sums claimed in this action, and that they were so held and retained by plaintiffs, and that plaintiffs had a lien thereon under said agreement for said sums, is sustained by the evidence. The declarations made by the plaintiffs to the defendants, without dissent, that they understood the agreement to be that plaintiffs should have a lien on the type as security, were an agreement, or at least evidence of an agreement for such lien (*Trevor* v. *Wood*, 36 N. Y. 307–310). The circumstances,

especially the continued possession by plaintiffs of the company's type year after year, were also facts tending to support the claim of a lien (*White* v. *Hoyt*, 73 N. Y. 505, 511, 512; *Phillip* v. *Gallant*, 62 N. Y. 256, 263, 264; *Hoffman* v. *Ætna Fire Ins. Co.*, 32 N. Y. 405; *Johnson* v. *Hathorn*, 2 Keyes, 476). The question whether plaintiffs had a lien or not was a mixed one of fact and law when these declarations were made, and the company, having allowed the plaintiffs to go on with the work on the assumption that there was a lien, was estopped from afterward claiming there was no lien (*Favill* v. *Roberts*, 50 N. Y. 222; *Brown* v. *Bowen*, 30 N. Y. 519; *Creque* v. *Sears*, 17 Hun, 123; *Tilton* v. *Nelson*, 27 Barb. 595; *Storrs* v. *Baker*, 6 Johns. Ch. 166; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 344).

·Irrespective of the agreement, a lien for the work done and materials furnished is given by the law (*McFarland* v. *Wheeler*, 26 Wend. 467, 473, 479, 480; *Morgan* v. *Congdon*, 4 N. Y. 552, 553; 2 Kent Comm. 634–638; *Mount* v. *Williams*, 11 Wend. 77, 79; *Grinnell* v. *Cook*, 3 Hill, 485, 491).

The rule that, when credit is given, there is no lien, is founded on the principle that a right of possession is necessary to the existence of a lien; and where credit is not inconsistent with the right of possession, a lien may exist. The rule does not apply where it is not intended that all the property shall be delivered before the debt becomes payable (*Mount* v. *Williams*, 11 Wend. 77; 3 Parsons Cont. 5th ed. 254–256; Edwards Bailm. 2nd ed. § 423).

CHARLES P. DALY, Chief Justice.—The plaintiffs, in my opinion, had no lien upon the type. It was held in *Bleaden* v. *Hancock* (Mood. & M. 465), that a printer has no lien upon stereotype plates which are left with him to print from; and I can see no distinction, so far as respects the right of lien, between type, as such, and stereotype plates. Cross, a careful and very reliable elementary writer on the law of lien says, as the result of the cases when his book was written, forty years ago, that " the courts have recognized and allowed without restriction, the right of every bailee to a lien on the goods bailed

De Vinne *v.* Rianhard.

to him, *where any additional value has been conferred by him on the chattel*, either directly by the exercise of personal labor and skill or indirectly by the intermediate use of any instrument over which he has control;" and that the right, when it does not exist from usage, or is not obtained by contract, depends upon whether any additional value has been conferred by the bailee on the chattel, may be illustrated by the decision in *Jackson* v. *Cummins* (5 Mees. & W. 342), that an agister, or one who takes charge of horses or cattle, has no lien for their keep, because he does not confer any additional value on the animal but merely takes charge of it and feeds it; and the decision in *Scarfe* v. *Morgan* (4 Mees. & W. 270), that one who receives a mare to be covered by a stallion has a lien, as the mare may be made more valuable, by proving in foal; in the first of which cases, Baron PARK declares the rule to be as follows: The general rule is, in the absence of any special agreement, that, whenever a party has expended labor and skill in the *improvement of a chattel* bailed to him, he has a lien upon it. This rule has been questioned in *Steinman* v. *Wilkins* (7 Watts & S. 466); but has been adhered to in this and other states (*Grinnell* v. *Cook*, 3 Hill, 491; *Morgan* v. *Congdon*, 4 N. Y. 553; *Pinney* v. *Wells*, 10 Conn. 105; *Cummings* v. *Harris*, 3 Vt. 244); and if it is to be departed from, it must be left to the court of appeals to do so. It is not for this court to overturn or disregard a long line of authorities. The respondent relies upon the rule as it is laid down by Senator VERPLANK in *McFarland* v. *Wheeler* (26 Wend. 467): "That every man who has lawful possession of anything upon which he has expended his money, labor or skill, at the request of the owner, has a right to detain it as security for his debt." This is a loose statement of the rule, which is more correctly laid down by JEWETT, J., in *Morgan* v. *Congdon* (4 N. Y. 553), as follows: that "Every bailee for hire, who by his labor and skill *has imparted an additional value to the goods*, has a lien upon the property for the payment of his reasonable charges," which is the rule that must be applied in this case.

The type from which the plaintiffs printed the "Register," from time to time, for the McKillop & Sprague Company, was

De Vinne *v.* Rianhard.

furnished by the company, and belonged to them. It cannot be assumed that the value of it, as type, was enhanced by the plaintiffs' printing from it. On the contrary, if there is any inference, it is that the constant use and printing from the type would diminish its value. The plaintiffs had a lien upon the book printed from the type, for that was a thing produced by their labor and skill; but I fail to see how, under the rule established by the authorities cited, they could acquire, except by contract, any lien upon the type, which was purchased by the McKillop & Sprague Company, and left with the plaintiffs to print from.

There is nothing in the evidence to warrant a finding that it was provided by contract between the plaintiffs and the McKillop & Sprague Company that the plaintiffs were to have the right to detain the type until they were paid for their labors and services in printing the "Register." The McKillop & Sprague Company were a corporation, and all there is on that subject, is the testimony of one of the plaintiffs, De Vinne, that he told Sprague, a member of the corporation, that the proposition which Sprague offered was declined because it would be weakening the plaintiffs' security; that, under the arrangement then existing, they held the notes of the company and Mr. Tappen, and held the printing type of the company in their possession, and that if they took Tappen's notes, they released the company and their claim on the types; and that Sprague, in reply, simply asked De Vinne if he had considered the matter fairly, and that De Vinne replied that he had, and that then the conversation dropped. This was a statement to one of the members of the corporation, by one of the plaintiffs, that, by the arrangement then existing, the plaintiffs held the printing types in their possession for their security; but that did not establish that a contract to that effect existed. It may have been that De Vinne assumed that by the law, he had a lien upon the type, which he would release if he took the promissory notes offered, which would be giving credit, as there is no lien, as a general rule, where credit is given ( *Trust* v. *Pirrson*, 1 Hilt. 397, 298); but whether he did or not, De Vinne's claiming that the plaintiffs had a

right to hold the type as security, in a conversation with one member of the corporation, would not, because that member did not controvert or dispute it, amount to an acquiescence or admission on the part of the corporation, that a contract existed between it and the plaintiffs to that effect (Pollock on Contracts, 474; Angel & Ames on Corporations, § 309, 8th ed.).

The respondent claims that, as the corporation, after that statement by De Vinne to Sprague, allowed the plaintiffs to go on with the work, under the assumption that they had a lien on the type, the corporation was estopped from afterwards setting up that there was no lien. Without conceding that the doctrine of estoppel would apply in any case to such a state of facts, it is sufficient to say, that a corporation is never estopped to deny what it had no legal power to do (*Hood* v. *New York, &c. R. R. Co.*, 22 Conn. 1502; *Pennsylvania, &c. Steam Nav. Co.* v. *Dandridge*, 8 Gill & J. 248).

The McKillop & Sprague Company, of which the defendant Rianhard is the receiver, was organized under the act of 1848 for the incorporating of manufacturing companies, &c., and the acts amendatory thereof; and by section 2 of that act, was forbidden to give any lien upon its real or personal estate, or to give any mortgage for the payment of any debt, contracted by it in the business for which it was incorporated, unless by the written assent of stockholders owning at least two-thirds of the capital stock of the corporation, and by filing the consent in the office of the clerk of the county where the property mortgaged by it was situated (2 Fay's Digest Laws of N. Y. 451, 452; 1 L. 1871, p. 1009, § 2). The mere silence, therefore, of Sprague in the interview in which De Vinne claimed that an arrangement existed to hold the type as security, and the fact that the employment of plaintiffs was continued thereafter by the company, could in no way estop the corporation or its receiver, from denying that the corporation had given any lien to the defendants, upon the type. There is another question, as to the assumption of the existence of a lien where credit was constantly given by the plaintiffs to the company, for the payment of the work done, which,

however, I do not purpose to go into; the conclusion being sufficient, that there was no lien upon the type, by the common law ; and that there was no contract between the plaintiffs and the corporation, to give one to the plaintiffs.

I think, therefore, that the judgment upon the report of the referee will have to be reversed.

LARREMORE and VAN HOESEN, JJ., concurred.

Judgment reversed.