64 375
64 473

## M. D. SKINNER v. ANDY CAUGHEY.[1]

May 11, 1896.

Nos. 9949—(101).

**Lien of Stable Keeper—Who Entitled to—Groom.**

Laws 1889, c. 199, § 2 (G. S. 1894, § 6248), does not give a lien to a servant of the owner for his services as groom or caretaker of horses or other domestic animals, but only to those, such as boarding-stable keepers or agisters, who board or keep animals bailed to them for this purpose.

**Same.**

The owner of a horse bailed it to the keeper of a boarding stable, to be boarded and stabled, but hired the defendant to water, feed, groom, and exercise the animal. For these purposes, the defendant had exclusive charge of the horse, but he had nothing to do with furnishing it food or stabling, which were furnished by the keeper of the stable. *Held*, that defendant's services were merely those of a groom, and his custody of the animal merely that of a servant.

**G. S. 1894, § 6248—How Far Repealed.**

How far the provisions of Laws 1889, c. 199, § 2 (G. S. 1894, § 6248), relating to liens on domestic animals, have been repealed or modified by Laws 1891, c. 28 (G. S. 1894, §§ 6249, 6250), quære.

Appeal by plaintiff from an order of the district court for Otter Tail county, Baxter, J., denying a motion for a new trial. Reversed.

*J. T. McCulloch* and *E. E. Corliss*, for appellant.
*M. J. Daly*, for respondent.

MITCHELL, J. This was an action to recover possession of a horse. The plaintiff claimed possession under a chattel mortgage executed by one Markell, the general owner, in January, 1894, and duly filed in February of the same year. The defendant claimed possession under an alleged lien for his services in taking care of the horse, rendered under a contract with Markell, entered into in April, 1894. There is no question but that the plaintiff was entitled to possession of the property, unless defendant had a paramount lien for his services.

The undisputed facts are that Markell (who was left in possession of the mortgaged property) made a contract with a livery and

[1] Reported in 67 N. W. 203.

boarding stable keeper for the board of the horse at the stable of the latter. But, the animal being a valuable stallion, and hence requiring special care, Markell hired the defendant, for a dollar a day, to feed, water, groom, and exercise the horse. In these matters defendant was to have exclusive charge of the horse, but he had nothing to do with furnishing it either food or stabling, which were furnished by the keeper of the stable. In short, defendant's services were merely those of a groom, and his possession or custody merely that of a servant.

As he would not have a lien at common law, if one exists it must be by virtue of some statute. He claims a lien under either or both G. S. 1894, § 6248 (Laws 1889, c. 199, § 2), and G. S. 1894, § 6249 (Laws 1891, c. 28, § 1). The title of the act of 1891 is "An act to provide for lien for livery and boarding-stable keepers and the enforcement thereof." The defendant can have no lien, at least none paramount to plaintiff's mortgage, under the act of 1891, for the reason, if no other, that, by the second section of the act (G. S. 1894, § 6250), the lien, if any, would be subordinate to the lien of plaintiff's mortgage. This provision was probably incorporated into the act in view of the decision in Smith v. Stevens, 36 Minn. 303, 31 N. W. 55, construing Laws 1885, c. 81, amending G. S. 1878, c. 90, § 17, which, together with section 16 of the same chapter, was repealed by Laws 1889, c. 199, § 3. Hence, if defendant had any lien, it must be under the act of 1889. The provisions of this act, so far as material here, are that "any keeper of a livery or boarding stable for horses, * * * and any person who pastures or keeps the same at the request of the owner or lawful possessor thereof, shall have the same lien for his charges for * * * keeping, supporting and caring for such property * * *."

The object of this and other statutes providing for a lien on domestic animals is apparent. At common law, boarding-stable keepers and agisters had no lien for the keep of animals bailed to them for this purpose, as they were deemed not within the rule which gives a lien to one who, by his labor and skill, has increased the value of a chattel bailed to him, nor within the reason of the rule which gives a lien to an innkeeper, viz. that he is bound to entertain and provide for any one who presents himself in the character of a guest. The soundness of this doctrine has been sometimes questioned. Steinman v. Wilkins, 7 Watts & S. 466; Kel-

sey v. Layne, 28 Kan. 218. But the law is well settled as we have stated it. The object of these and kindred statutes is to change this common-law rule by giving boarding-stable keepers and agisters (those who take the animals of another into their own grounds, to be fed for a consideration to be paid by the owner) a lien on the animals for the food and shelter furnished for them. Almost every state has enacted a statute of this kind, but, so far as we have discovered, they are limited to those who furnish food and stabling or shelter to animals bailed to them for that purpose. While the lien given by such statutes may, and usually would, extend to and include such care of the animals as is connected with and incident to the furnishing of board and stabling, we have found no statute which gives a lien to a mere servant of the owner for his services as groom or mere care-taker. The nearest approach to this is to be found in the statutes of Western grazing states (where the pasturage is generally on public lands), which give a lien to "herders."

There is nothing in our statute that indicates an intention to give a lien to the mere servant of the owner for his wages for taking care of an animal; and we think no decision can be found holding that any statute of a similar nature gives a lien under such circumstances. Bailey v. Davis, 19 Or. 217, 23 Pac. 881; Hoover v. Epler, 52 Pa. St. 522. If it be held that defendant has a lien, then, on the same ground, it would follow that every coachman, plowman, stage driver, and hostler has a lien for like services on the team which he drives or grooms. The statute was never intended to apply to such cases, but merely to give a lien to those to whom animals are bailed for the purpose of being boarded or pastured by the bailee. The word "keep," being used in connection with the word "pasture," is evidently used in the sense of "keeping" or "boarding."

We have assumed, for the purposes of this case, that the provisions of the act of 1889 relating to liens on domestic animals have neither been repealed nor modified by the act of 1891; but we have not considered that question, for the reason that it was unnecessary, in view of the construction we have placed on the former act.

It appears that, at one time during the term of defendant's service, he thought that the keeper of the stable did not furnish grain sufficient to keep the horse in proper condition, and thereupon, at

his own expense, he procured a few bushels of oats, of the value of $3.70, for which he also claims a lien. According to defendant's own testimony, under his contract, he had nothing to do with furnishing feed for the horse. He does not claim that he furnished this grain at the instance or even with the knowledge of the owner. It was a mere volunteer act, entirely independent and outside of his contract of service. It is a small matter, but we do not think that even for that item the defendant brings himself within the statute.

Order reversed, and new trial granted.