[No. 1728.   Decided May 31, 1895.]

JOSEPH J. HOOKER, *Respondent*, v. DOUGALD McALLIS-
TER, *Appellant.*

#### AGISTER'S LIEN — WHO ENTITLED TO.

Section 1705, Gen. Stat., providing that any farmer, ranchman,
herder of cattle, etc., to whom any cattle or sheep shall be intrusted
for the purpose of feeding, herding, pasturing, caring for or ranch-
ing, shall have a lien thereon for such services, and shall be author-
ized to retain possession of such property until the amount is paid,
does not confer an agister's lien upon one who is hired by the month
to herd sheep, where the possession of and responsibility for such
sheep remains in the owner.

*Appeal from Superior Court, Klickitat County.*

*Alfred S. Bennett,* for appellant.
*Winthrop B. Presby,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an action brought to foreclose
an alleged lien upon a band of sheep belonging to the
defendant.   A demurrer was interposed to the com-
plaint, to the effect that it did not state facts sufficient
to constitute a cause of action; which demurrer was
overruled by the court.   The defendant answered and
plaintiff replied.   Whereupon the defendant demanded
a trial by jury, which request was denied by the court.
Judgment was rendered in favor of plaintiff, decree-
ing the amount that was due him for services ren-
dered, and establishing and decreeing a lien upon the
sheep to satisfy the judgment.   From such judgment
and decree defendant appeals to this court.

This action was brought under § 1705 of the Gen-
eral Statutes of Washington, which provides that —

"Any farmer, ranchman, herder of cattle, tavern-

keeper, livery and boarding stable keeper, to whom any horses, mules, cattle or sheep shall be entrusted for the purpose of feeding, herding, pasturing, training, caring for or ranching, shall have a lien upon said horses, mules, etc., for such feeding, herding, pasturing, etc., and shall be authorized to retain possession of such property until the amount is paid."

It is contended by the appellant, first, that the complaint is insufficient in that the sheep attempted to be described are not sufficiently described; second, that the section of the statute referred to does not apply to a servant who is employed by the master in the general work of taking care of a band of sheep, and who does not have any other possession of the sheep than the mere possession of a servant possessing and controlling them for the master and constantly under the master's control. The material portion of the allegations of this complaint, so far as they bear upon the questions raised here, is as follows :

" 1st. That the said defendant is and at all times hereinafter was the owner of a certain band or herd of sheep; that said band or herd of sheep on the 27th day of March, 1892, numbered about 3,500 sheep; that said defendant during the year 1893 sold about 2,400 of said sheep and their increase, and said band now numbers about 2,400 sheep; which said sheep are now in the county of Klickitat, and at all the times herein mentioned have been within the state of Washington.

" 2d. That on or about the 27th day of March, 1892, the said defendant employed said plaintiff to act as herder of said band of sheep at the agreed wages of $40 per month for each month, except in lambing time when plaintiff was to receive $50 per month for the month in which the lambs were being dropped, after the first year; and on or about the 27th day of March, 1892, the plaintiff commenced work for the defendant as such herder, and has since said date continued to herd said sheep at all times, except from

Dec. 12, 1892, to Jan. 17, 1893, during which time only the plaintiff was absent from said band of sheep."

It seems to us that there is no sufficient description of these sheep.  It will be seen that all the description there is is that the defendant was the owner of a certain band of sheep now numbering about 2,400, and that they are now in the county of Klickitat, and at all times prior to the filing of the complaint have been within the state of Washington.  The statement that the band on the 27th day of March, 1892, numbered about 3,500 sheep, and that the defendant during the year 1893 sold about 2,400 of said sheep and their increase, in no way helps to describe the band as they now exist.  It would be impossible for an officer whose duty it was to foreclose this lien to determine the particular sheep, or band of sheep which he was authorized to levy upon, from this description.

It is urged by the respondent that no more definite description could be given of sheep which had neither ear-marks nor brands.  It does not appear from this complaint that these sheep were devoid of ear-marks or brands, and if it did so appear, that statement would in itself be a description of a definite character, and one which would help to distinguish them from other bands of sheep with brands or ear-marks.  It does not even state what kind of sheep these are, whether ewes or wethers, whether old or young.  It does not locate them on any particular ranch or in any particular portion of the county; and while it is true that it would be impossible to describe a band of sheep with that definiteness which might characterize a description of real estate, yet it seems to us that the mere statement that it is a band of sheep owned by defendant, and that the band is within the boundary lines of Klickitat county, is exceedingly indefinite.

The main question, however, to be decided in this case is the construction of the statute above referred to. We are satisfied, both from an investigation of the statute itself and from the authorities which we have examined, that it was not the intention of the legislature to confer a lien upon persons who were merely hired by the month or day to herd sheep or cattle of any kind, where the possession remained in the owner and where the owner was responsible for such cattle; but that the statute intended to confer this lien upon agisters, upon those who took possession of the stock above referred to and who became responsible for them; and that the word "herder," used in the statute, has reference to that class of persons to whom is intrusted the possession and control of the property mentioned. The connection of the word "herder" here with the other lienors provided for in the statute strengthens this idea. It would not be reasonable to conclude that the word "farmer" used in the statute would have reference to a person who left his farm and went to work for wages in herding or feeding or keeping cattle; but it evidently means that where this character of stock is intrusted to a farmer who takes the same to his farm and keeps it there, he shall have the lien provided for in the statute. The same with "ranchmen," so mentioned. If any other construction were to be given to it, then it would not be necessary to designate them as "farmers," "ranchmen," "herders of cattle," "tavern-keepers" or "livery and boarding stable keepers;" but all that it would be necessary to have said, and that which the legislature naturally would have said, was that any person who shall be intrusted for the purpose of feeding, herding, pasturing, training, caring for or ranching, shall have a lien upon the property mentioned.

The very fact that they are mentioned as farmers and ranchmen and tavern-keepers and livery and boarding stable keepers, shows that the language has a local significance, and presumes an intrusting of the property to these parties mentioned in the statute; and the "herder of cattle" there mentioned we have no doubt refers to a person who is in the herding business, who takes horses, mules, cattle and sheep into his possession and away from the possession and control of their owner, and is responsible for their safe keeping and safe return at the expiration of the time for which the contract provides, the same as a livery stable keeper is responsible for horses and cattle that he takes into his possession. The idea of bailment no doubt entered into the minds of the legislature and, in our judgment, this statute was only intended to apply to cases where there was an actual bailment.

It might be urged by the respondent that even with this construction of the statute his complaint was sufficient. But it is nowhere alleged in the complaint that these sheep were intrusted to him for the purpose of herding them, and, construed as we would construe any other pleading, it seems to us that it is an allegation of hire simply. The respondent insists that the phrase "shall be intrusted" has no particular significance; but it occurs to us that it has a great significance; that, in fact, it really determines the nature of the employment for which this lien is given. The cases of *McDearmid v. Foster*, 14 Or. 417 (12 Pac. 813), *Wenz v. McBride*, 20 Colo. 195 (36 Pac. 1105), *King v. Indian Orchard Canal Co.*, 11 Cush. 231, and *Bailey v. Davis*, 19 Or. 217 (23 Pac. 881), it seems to us are conclusive upon this question. It is admitted by the respondent that these cases are in point, but he insists that they were decided under the rules applicable to common

law liens and not to statutory liens. We fully concur in the sentiment that these statutory liens should be liberally construed; in fact, that is one of the provisions of the statute with reference to them. But a liberal construction of the statute means simply that parties who are entitled to these statutory liens shall not be deprived of them by any technical or strained ruling or construction. It does not mean that by construction the lien must be made to extend beyond the plainly expressed will of the legislature. It must not be forgotten that this right of lien is a statutory right and while the act itself is to be liberally construed, the right itself cannot be extended or enlarged by unwarranted implication.

Even were it conceded that the complaint was sufficient to bring the case within the construction which we have here indicated ought to be placed upon .the law, the testimony plainly shows that the respondent in this case was simply hired to do this work as a common servant; that he had no care, custody or control whatever over the sheep; that had they committed any depredations or damaged any one, the appellant and not the respondent would have been responsible for such damages; and this, we think, is one of the true tests of distinction in this kind of a case. The herder who takes a band of sheep or cattle or horses into his possession and is entrusted with their care, custody and control, and takes them out of the care and control of the owner, whether his compensation be for so many dollars a month, or so many dollars a month per head, for the stock, is liable for all damages which may occur by reason of the depredations of said stock or any damage which may occur to the stock, and is responsible to the owner for their safe return. But in this case there was no liability whatever. The respond-

ent's own testimony, as cited by the appellant, plainly shows this, and shows that the defendant had the sheep at his own ranch. We will here insert a brief excerpt from the testimony:

"*Question:* Did not the defendant have them at his own ranch or camp the whole time you were working for him? *Answer:* He was moving them from one place to another, the same as the rest of them does. Never had any particular place except in the winter.

"Q. But he always had a camp where they were brought at night, did he not? A. He did.

"Q. And in the winter time would take them to a suitable place for the winter? A. Yes, sir.

"Q. While you were herding did he have any one else helping with the sheep? A. Yes.

"Q. Who? A. I could not name them. He never kept a man over a week except myself.

"Q. What were those other men doing? A. They were herding and packing and whatever came to hand around the camp.

"Q. The same as you? A. They was."

Thus it will be seen that this particular herder had no more control or custody or possession of these sheep than the other herders who, he says, were employed by the owner of the sheep at the same time that he was herding them; that they were doing just about what he was doing; but that the owner was looking after their interests, providing the herding territory and taking them to suitable places for the winter. The testimony all the way through shows so conclusively to our minds that this respondent never had these sheep entrusted to him, and that he never had the possession of them that is contemplated by the statute, that it would be useless to discuss it further.

We are satisfied, then, (1) that the statute does not confer a lien upon a man who herds sheep for wages or by the day or month; and (2) that the complaint

did not state facts sufficient to constitute a cause of action. It follows that the demurrer to the complaint should have been sustained, in which event the defendant would have been entitled to a jury to try the questions which were put in issue by the pleadings.

The judgment will therefore be reversed, and the cause remanded with instructions to sustain the demurrer to the complaint.

HOYT, C. J., and SCOTT, ANDERS and GORDON, JJ., concur.