R. BECKER & DEGEN ET AL. V. HENRY E. BROWN.

R. BECKER & DEGEN ET AL. V. WALTER F. DALE.

FILED JUNE 18, 1902. Nos. 11,767 and 11,768.

Commissioner's opinion, Department No. 3.

1. **Agister's Lien:** PRIOR CHATTEL MORTGAGE: SUPERIOR LIEN: RECORD: SUBSEQUENT MORTGAGE. Under the statute of this state, an agister's lien is inferior to that of a prior valid chattel mortgage, properly of record, but is superior to a mortgage executed after it has attached and while the property is in the possession of the agister.

2. ———: STATUTE: CONSTRUCTION. The statute creating the agister's lien, is remedial in its nature, and should be liberally construed for the purpose of effectuating its object.

3. ———: CHANGE OF POSSESSION. An agister's lien will not, as between the parties, or as to third persons having notice, be lost by change of possession not inconsistent with it, and not under such circumstances as to indicate an intent to waive, relinquish or abandon it.

4. **Evidence.** Evidence examined, and *held* to uphold the agister's liens contended for by the defendants in error in this action.

PROCEEDINGS in error from the district court for Phelps county. Tried below before BEALL, J. *Affirmed.*

*James I. Rhea,* for plaintiffs in error:

Common-law liens, as distinguished from contract or statutory liens, attach to the property, without reference to the ownership; and override all other rights in the property; while the latter liens are subordinate to all prior existing rights therein. *Sullivan v. Clifton,* 55 N. J. Law, 324, 39 Am. St. Rep., 652.

*S. A. Dravo, contra.*

AMES, C.

The above-entitled cases are in essential respects identical, and they having been by agreement of the parties

argued and submitted at one time; they will be disposed of in a single opinion.

Section 28 of chapter 4 of the Compiled Statutes of this state enacts: "When any person shall procure, contract with, or hire any other person to feed and take care of any kind of live stock, the person so procured, contracted with, or hired, shall have a lien upon such property for the feed and care bestowed by him upon the same for the contract price therefor, and in case no price has been agreed upon, then for the reasonable value of such feed and care." This is an amendment of a former statute, which, however, differed therefrom only in respect to the specific regulations as to remedies, and concerning which, it was held by this court in *Marseilles Mfg. Co. v. Morgan*, 12 Nebr., 66, that a lien arising thereunder was subject to the lien of a prior valid chattel mortgage.

In July, 1898, Charles E. Woollen purchased of the plaintiffs in error, Becker & Degen, a herd of cattle then situated in the state of Colorado, and to secure payment of a part of the purchase price, executed in that state an instrument intended as a chattel mortgage to the vendors, upon the property. It was practically conceded upon the argument that the instrument was, considered as a Colorado contract, void, for non-compliance with the statutory regulations of that state with respect to the manner of its execution; and it misdescribed the cattle as to marks and brands, and recited that they were then upon a certain tract of land in Harlan county, in this state, upon which they were not then or afterwards placed. The mortgage was filed in Harlan county on July 8, 1898, but the cattle were taken to Furnas county, and remained there until September 26th of that year, when they were driven by Woollen to the feed lots of the defendants in error Brown and Dale.

We think it quite clear that this instrument, whether absolutely void or not, was not constructive notice to the parties afterwards dealing with the property. Upon the date last mentioned the animals were delivered by

Woollen, a part of them to Brown and a part to Dale, under agreements for keeping and feeding them through the winter by the latter at a specified rate of compensation. In January, 1899, the plaintiffs in error, with knowledge of the foregoing facts, obtained another instrument, intended as a mortgage, from Woollen, which correctly described the cattle as to marks and brands, but made the same recital as to their situation as did the Colorado document. Neither Brown nor Dale had any actual knowledge of the existence of either of these papers until April, 1899, and the second of them could not affect their rights while in lawful possession of the animals under their contract for keeping and feeding them. Whether the second mortgage was valid or not, it was subject to their lien as agisters, while the first-mentioned instrument was void as to them, at least until it was brought to their actual notice. At least as early as the fore part of January the plaintiffs in error became aware of the infirmity of their Colorado contract, and sought to remedy it by obtaining a new mortgage. At and before that time they knew that Brown and Dale were in possession of the stock, feeding and caring for it in good faith under the arrangement between the latter and Woollen. It would not be consonant with the most common principles of honesty to permit them to lie by for a term of nearly four months longer, and then successfully assert a lien upon the property superior to that of the agisters. This they attempted to do. On the 26th of April, Perry, an agent of the plaintiffs in error, exhibited one or both of these instruments to Brown and Dale, who were near neighbors, and telling them that he had a mortgage on the cattle, demanded possession of them. Brown and Dale both declined to yield possession, asserting that they had a lien on the animals for their keep under the arrangement with Woollen; but upon insistence by Perry that he had a valid mortgage, giving a superior right, and that he intended to take the property in any event, they so far yielded as to waive taking by actual force, and on the following day assisted in weigh-

ing the animals, so as to ascertain the amount of compensation to which they were entitled, and in turning them into the public road, to be driven to Atlanta, a railroad station in Phelps county, which they participated in doing. Woollen was not present in person or by proxy, and there was no delivery to him actual or constructive; and neither Brown nor Dale at any time said anything or did any act indicating a retraction on the part of either of them of his right to a superior lien on the cattle for his charge for keeping and feeding them. Soon after arrival in Atlanta, Brown and Dale begun separate actions in replevin for the recovery of so many of the animals as had been thus in the possession of each of them, respectively. Each action resulted in a verdict and judgment for the plaintiff, and both are presented, upon separate petitions in error, for review.

A large number of errors are assigned, but we do not feel called upon to discuss these, because, in our opinion, the results reached were alone such as this court could have upheld. The facts as above stated are substantially undisputed, and they present, as we think, but one possible question for debate. There can be no doubt that on the 26th day of April, 1899, Brown and Dale had each an agister's lien upon the cattle superior to any claim upon them in behalf of the plaintiffs in error. Was this lien waived or lost by the occurrences of the following day? The general rule that a bailee for hire, who performs labor or services upon or with respect to the subject of the bailment, loses his lien for compensation by permitting the article to go out of his possession, is subject to exceptions. When the property is delivered to the pledgor the lien is usually lost as to creditors of and purchasers from the latter, but as between the parties the effect of such delivery depends very much upon the purpose and intent with which it is made. Edwards, Bailments, pars. 201, 223, 269. "It is only between the claimant and third persons that continued possession is essential. As between the claimant and the owner, possession is by no means

essential, except where, by surrendering the possession, the claimant can be fairly understood to have surrendered his lien; and then the question is, not whether he has yielded his possession, but whether he has surrendered his lien." Jones, Liens, par. 22; *McFarland v. Wheeler,* 26 Wend. [N. Y.], 467. Tested by this rule, the conduct of the bailees can not be regarded as such as to deprive them of their liens. The plaintiffs in error claimed under Woollen, and by virtue of alleged chattel mortgages executed by him. Their right can not rise higher than its source, and the most that they can insist upon is to be regarded as standing in his shoes. Brown and Dale did not surrender the cattle voluntarily, or with the intent to yield or waive or relinquish their claims. All that they waived, and all that their language and conduct indicated that they intended to waive, was the use of actual force in the taking of the property from them.

But we think that by our statute the legislature plainly indicated an intent to do something more than to extend to agisters the common-law lien of a bailee for hire. To such a bailee the law afforded no remedy except the retention of possession, and his right was lost or defeated by a variety of circumstances which would hardly be held to destroy a lien under the statute,—such, for instance, as extending credit to the bailor for a stipulated time, or, according to some authorities, the taking as security the note of a third person. *Fieldings v. Mills,* 2 Bosw. [N. Y.], 489; Jones, Liens, p. 656, ch. 21. But the statute, besides the matter above quoted, provides that the lien may be foreclosed in the manner provided by law for the foreclosure of chattel mortgages,—an act which of itself would defeat a common-law lien. This right was introduced by amendment, and is in substitution of provisions intended merely for protecting the agister's possession. It is significant of an intent to assimilate the lien in important particulars to that of a chattel mortgage, from which it does not now very materially differ. The question was discussed on the argument whether the lien is statutory or

contractual. There seems to be no room for doubt that it is statutory, because it did not exist at the common law, although its inception, in any particular case, depends upon a contract, express or implied, by which the rate of compensation and the time and terms of payment may be regulated. "Statutory liens," says Mr. Justice Clifford, speaking for the United States supreme court in *Beall v. White*, 94 U. S., 382, "have, without possession, the same operation and efficacy that existed in common-law liens where the possession was delivered," and a lien for rent was accordingly enforced, although possession had changed more than once with knowledge and consent of the landlord. The same rule is adopted in *Grant v. Whitwell*, 9 Ia., 152. And it is said in Jones on Liens, paragraph 104: "Statutory liens generally differ from common-law liens in not requiring possession to support them. The protection afforded at common law by possession is, in case of statutory liens, afforded by notice to the owner, or by attachment of the property within a limited time. A statutory lien without possession, has generally the same operation and efficacy that a common-law lien has with possession,"—citing the above-mentioned decisions and *Quimby v. Hazen*, 54 Vt., 132. The statute is remedial in its character, and in accordance with familiar rule, it should receive a liberal construction for the purpose of effectuating its object.

From the foregoing considerations, we are convinced that the defendants had valid and superior liens upon the property in controversy, of which the record affords no sufficient evidence of waiver, relinquishment or abandonment, and it is recommended that the judgment of the district court be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.

NOTE.—*Agister's Lien.—Chattel Mortgage.*—Agister is sometimes spelled agistor, and, more properly, agistator. He was an officer who had charge of the cattle pastured, for a certain stipulated sum, in the king's forest, and who collected the money paid for them. Encyclopedic Dictionary. He corresponded exactly to the Roman *scripturarius*. Harper's Latin Dictionary. Agister now means one who takes cattle of another into his own ground to be fed for a consideration to be paid by the owner. Anderson, Law Dictionary. He is not an insurer but a bailee. Story, Bailments, 443. Although he may have no lien for the keep he may maintain trespass or trover in a proper case, against a stranger. *Bass v. Pierce*, 16 Barb. [N. Y.], 595. The agister and not the owner is liable for trespass committed by the animal. *Rossell v. Cottom*, 31 Pa. St., 525, 527; *Reddick v. Newburn*, 76 Mo., 423, 424; *Ward v. Brown*, 64 Ill., 407. The liability for the trespass of animals is imposed, not because of ownership but because of possession. Cooley, Torts, *340. *Cook v. Morea*, 33 Ind., 497.

It has been held in Massachusetts that an action of common-law trespass for damage feasant may be maintained either against the owner or against the agister, at the election of the party plaintiff. *Sheridan v. Bean*, 8 Met., 284.

An agister's lien, created by statute, is paramount to the lien of a prior chattel mortgage upon the same chattel. *Case v. Allen*, 21 Kan., 217, 30 Am. Rep., 425. *Contra: Sargeant v. Usher*, 55 N. H., 287, 20 Am. Rep., 208. Statutory lien in favor of keeper of jack or stallion is subordinate to chattel mortgage. *Easter v. Goyne*, 51 Ark., 222. —W. F. B.