'Argued May 5, decided May 27, 1913.

## LYDELL v. FIRST BANK OF JOSEPH.

(132 Pac. 518.)

**Animals—Herders' Lien—Statutes.**

1. L. O. L., Sections 7484, 7485, declaring that any herder of sheep, or anyone to whom they are intrusted for care and attention, under contract therefor with their owner, has thereon a possessory lien for the amount due on the contract, and may retain possession of them till it is paid, being an act entitled "An act giving herders a lien on animals herded," not professing to amend Sections 7451, 7452, giving a lien to "any person who shall depasture or feed any * * livestock, or bestow any labor, care or attention on the same at the request of the owner," but passed by the legislature next after a decision that they gave a lien to agisters only, and not to servants of the owner, will be construed as a remedial statute and, in view of the mischief to be remedied, to give a lien to a herder for wages, though he is not strictly in "possession" of the animals for which he cares, it being intended he may retain custody of them till his wages are paid.

**Animals—Herders' Lien—Services Included.**

2. The services of a camp-tender for persons engaged in herding sheep, whose duties as such are to carry provisions to the camp, including salt for the sheep, to select camping places and feeding grounds, and to be "boss" of the camps, are within L. O. L., Sections 7484, 7485, giving a lien for his wages to a herder of sheep or one to whom they are intrusted for care and attention, under contract therefor with their owner.

**Animals—Herders' Lien—Loss—Giving up Possession.**

3. A herder of sheep does not voluntarily give up possession of them and thereby lose his lien or right to retain possession of them till his wages are paid, given by L. O. L., Sections 7484, 7485, though the herd is, from time to time, reduced by sales, and by natural increase or purchase identity of the greater number of individual sheep is changed since the commencement of his services, and though, during his temporary absence, the herd is, without the consent of either, taken from the custody of one put in charge of them by him.

[As to implied contract to pay rent for use of another's land for grazing cattle, see note in Ann. Cas. 1912C, 1147. As to herding cattle on uninclosed land, see note in 81 Am. St. Rep. 449.]

From Wallowa: JOHN W. KNOWLES, Judge.

Statement by MR. CHIEF JUSTICE MCBRIDE.

This is an action by Bruce Lydell against the First Bank of Joseph, a corporation, F. D. McCully and J. A. Branson, for the conversion of a band of sheep upon which plaintiff claimed a lien by virtue of Sections 7484, 7485, L. O. L. The facts are substantially as follows: On March 4, 1909, Will H. Stickney, the owner of a band of about 3,600 sheep, employed plaintiff to feed, herd, and care for them, or rather to assist in so doing in conjunction with others employed for a like purpose. Plaintiff thereafter continued in the employ of Stickney until July, 1911, and during that time was constantly engaged either in feeding the sheep, caring for them during the lambing season, herding them upon the range, or tending camp for other employees who were engaged in the actual herding of the sheep, which from time to time were broken up into three bands for convenience in feeding or handling upon the range. His possession was at all times that of an employee laboring for wages, and not otherwise. He testified that as camp tender he carried provisions, supplies and salt for the sheep to the various camps; that in his position as camp-tender he was supposed to select the feeding places for the flock and to be "boss" of the camp. From time to time portions of the flock were sold or traded for other sheep until, at the time of the alleged seizure of them by defendant, there remained only about 1,600 head of sheep in plaintiff's charge. Stickney having informed plaintiff that he was about to fail financially, plaintiff determined to hold the sheep he was then herding for the wages due him. He left them in charge of another person to hold for him, and in his absence they were seized, driven away, and sold by agents of the defend-

ant bank to satisfy a mortgage due the bank.   Other facts are stated in the opinion.              AFFIRMED.

For appellants there was a brief, with oral arguments by *Messrs. Crawford & Eakin* and *Mr. A. W. Schaupp.*

For respondent there was a brief, with oral arguments by *Messrs. Sheahan & Cooley.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

1. The first question that presents itself is the construction of Sections 7484, 7485, L. O. L., which are as follows:

"Sec. 7484.   Any herder of sheep, or anyone to whom any sheep shall be intrusted for their care and attention, within any county of the State of Oregon, shall hereafter, whenever any contract for such care or attention shall have been entered into between the person rendering such services and the owner of such sheep, have upon any and all such animals so herded, cared for, or attended, a possessory lien for the amount which may be due for such contract.

"Sec. 7485.   Any person rendering services as set forth in Section 7484 may retain possession of any or all of the animals so herded, cared for or attended until the full amount due him from the owner of the animals by virtue of the contract for such services entered into between them shall have been paid; and the lien thereby created shall have preference over any and all other liens or encumbrances upon such animals."

It is contended that by the use of the words "shall have a possessory lien" and "may retain possession" no lien is given to the person who is hired by the owner merely to herd the sheep; that the possession of the employee is the possession of the owner, and that the employee, not having any possession to begin with,

cannot "retain possession" of animals of which, as a matter of law, he never had possession; that the statute is intended to protect agisters and others who take sheep into their possession for the purpose of feeding and caring for them upon their own grounds or within their own inclosures, and cannot be extended to employees caring for sheep upon the grounds of the employer and under his direction. The statute is vague and must be construed with reference to laws in force at the time of its adoption, and in view of the mischiefs to be remedied. Being a remedial statute, it should be construed liberally. There was upon the statute books of the state at the time the act in question was passed a statute which gave a lien to "any person who shall depasture or feed any horses, cattle, hogs, sheep, or other livestock, or bestow any labor, care, or attention upon the same at the request of the owner or lawful possessor thereof * *": L. O. L., §§ 7451, 7452. It will be seen that this act gave a lien to agisters of cattle and sheep; but in the case of *Bailey* v. *Davis,* 19 Or. 217 (23 Pac. 881), decided in 1890, and before the act under which plaintiff claims was passed, it was held that, where the relation of master and servant existed, the servant could acquire no lien under Section 7452, *supra,* on his master's cattle for depasturing or feeding them. This left agisters and their class with a right to a lien, but denied it to the herder who works for wages.

The next legislature met in January, 1893, and passed the act in question. It does not profess to be an amendment of the previous act, which is still in force, and the conclusion is irresistible that it was passed with a view to correct the mischief pointed out in *Bailey* v. *Davis,* 19 Or. 217 (23 Pac. 881), and to give the herder working for wages the remedy which that decision announced he did not have under the pre-

ceding statute. It is true that the statute uses the term "possessory lien," a phrase unknown to the law dictionaries, and provides that the herder may "retain possession" of the animals, but we are of the opinion that it was intended by this to merely indicate that the herder might retain the custody of the animals, and that having the custody he might hold them until his wages were paid. It is true that a herder working for wages is not strictly in possession of the animals which he cares for, but his custody of them is such a *quasi* possession as we think will satisfy the demands and intent of the statute now under consideration. For many purposes the possession of an agent, bailee for hire, factor, repairer, attorney, etc., is the possession of the principal, and yet, for the purposes of sustaining a lien for services, the custodian is deemed to have possession of the property. The wage-earner is a favorite of the law. The contractor, dealer, and agister is usually able to protect himself and to inform himself as to the financial standing of those with whom he deals, but the employee frequently has neither the intelligence nor the opportunity to do this; he trusts to appearances. His services in the care and preservation of the flock are of as much value to a mortgagee of it as they are to the owner, insomuch as they tend to preserve the value of the security. Unless the statute in question applies to employees for wages, it is meaningless and unnecessary, as agisters were already fully protected by statutes existing at the time the act in question was passed. We cannot assume that the legislature intended to do a vain thing, nor that it was ignorant of the existing laws, and we are therefore compelled to conclude that, when it passed the act in question and entitled it "An act giving herders a lien upon animals herded," it referred to that class of persons most frequently known as "herders," namely,

persons employed for wages to care for sheep and other stock.

2. Another question raised is as to the nature of plaintiff's employment. It is claimed that the wages earned by him during the time he was employed as camp-tender should be deducted from the amount of his recovery for the reason that such services were not rendered upon a contract for "care and attention" to the animals. Care and attention, or even possession, does not include personal contact with the animals herded or cared for. It means such services as are necessary for the preservation or safety of the animals. The plaintiff testified that his duties generally as camp-tender were to carry provisions to the camps, including salt for the sheep, to select camping places and feeding grounds, and to be the "boss" of the camps. All these services were necessary to the proper care of the animals, and as "boss" the animals were necessarily intrusted to his care. He had supervision over them, and the services performed involved no small amount of manual labor. The services thus rendered come within the reasoning of the following cases: *W. F. T. & M. Co.* v. *Remick,* 1 Or. 169; *Lowenstein* v. *Meyer,* 114 Ga. 709 (40 N. E. 726); *Capron* v. *Strout,* 11 Nev. 304; *Flagstaff S. M. Co.* v. *Cullins,* 104 U. S. 176 (26 L. Ed. 704); *Warner* v. *Hudson R. R. R. Co.,* 5 How. Pr. (N. Y.) 454. In opposition to the views herein announced, our attention is directed to the following cases: *Hooker* v. *McAllister,* 12 Wash. 46 (40 Pac. 617); *Underwood* v. *Birdsell,* 6 Mont. 142 (9 Pac. 922); *Auld* v. *Travis,* 5 Colo. App. 535 (39 Pac. 357); *Boston & Kansas City Loan Co.* v. *Dickson,* 11 Okl. 680 (69 Pac. 889). These decisions are upon statutes materially different from ours. The Washington statute is as follows: "Any farmer, ranchman, herder of cattle, tavern-keeper, livery and boarding stable keeper, to whom any horses, mules, cattle, or

sheep shall be intrusted,'' etc.: 1 Hill's Ann. Stats. & Codes, § 1705.   The court held that by the rule *noscitur a sociis* the specification of farmers, ranchmen, liverymen and tavern-keepers indicated that the phrase ''herder of cattle,'' as used in the statute, was intended to designate an agister and not an employee for wages. The Montana and Colorado statutes are similar to the Washington statute, and are practically identical with Section 7451, *supra,* upon the construction of which the case of *Bailey* v. *Davis,* 19 Or. 217 (23 Pac. 881), turned.   The statute of Oklahoma was as follows: ''Every person who shall keep, board or train any horse, mule or other animal, shall for the amount due thereof, have a lien on such animal, and on any vehicle, harness or equipment coming into his possession therewith,'' etc.: Stats. 1893, § 253.   The court held that the section referred to persons who took animals into their possession to train or board as contractors for such work, and did not include employees for wages.   None of these cases are in point under our statute, and all of them seem to give a rather more technical meaning to the term ''possession'' than is really consistent with a liberal interpretation of a remedial statute.

3. It is also urged that the plaintiff had voluntarily given up possession of the sheep and had thereby lost his lien, but we do not so understand the testimony. It is true that by sales the herd was reduced from time to time, and that by natural increase or purchase the identity of the greater number of individual sheep was changed, but it was the same flock, considered as a flock, upon which he began to bestow his care in 1909, and the evidence shows that his care and attention were constant, and that the sheep were taken from the custody of a person put in charge of them by plaintiff, without the consent of such custodian or of plaintiff.

We find no error in the record and the judgment is affirmed.                                   AFFIRMED.