**NATIONAL BANK OF COMMERCE v.
McDANIEL et al.**

No. 8877—Opinion Filed June 25, 1918.

Rehearing Denied Aug. 27, 1918.

(174 Pac. 286.)

(Syllabus.)

**1. Animals—Lien for Labor or Feed—Construction of Statute.**

Sections 175, 176, Rev. Laws 1910, are remedial in their nature, and should be liberally construed in favor of those for whose protection they were enacted.

**2. Same—Possession.**

The lien provided for by sections 175, 176, Rev. Laws 1910, is not designated a possessory lien, nor is it by the terms of the statute dependent upon possession. In these circumstances, such possession as persons employed in feeding, grazing, or herding domestic animals ordinarily have of the herds intrusted to their care by the owner is sufficient to create a lien in their favor, and the fact that the person so employed is working for a stated wage per month does not deprive him of the protection of the statute.

**3. Chattel Mortgages—Lien for Grazing or Feed—Priority.**

The lien of a valid recorded chattel mortgage will take precedence over the subsequently acquired lien of a person furnishing feed to the owners of the animals embraced in said mortgage, unless such feed was furnished to the owner with the consent of the mortgagee.

**4. Same.**

The lien of a person who furnishes feed to the owner of certain animals with the knowledge and consent of a mortgagee is superior to the lien of said mortgage, although furnished after the filing thereof.

Error from District Court, Seminole County; Tom D. McKeown, Judge.

Action to foreclose a chattel mortgage by the National Bank of Commerce against J. S. McDaniel, in which B. G. Hoff sought to enforce a lien. Judgment for Hoff and plaintiff brings error. Affirmed.

Lydick & Lydick and Kittie C. Sturdevant, for plaintiff in error.

Pryor & Stokes, for defendant in error Hoff.

KANE, J. This was an action upon a promissory note and to foreclose a chattel mortgage upon some cattle, given to secure the payment thereof, commenced by the plaintiff in error, plaintiff below, against the de-

fendant in error J. S. McDaniel, defendant below. The action as between these parties resulted in a judgment in favor of the plaintiff and the foreclosure of the mortgage, as prayed for, which was not appealed from, which closes the case in so far as these parties are concerned. The matter for review concerns the right of the defendant in error B. G. Hoff to enforce a lien upon the cattle which he claims by virtue of sections 175 and 176, Rev. Laws 1910, which read as follows, respectively:

"175. Any person employed in feeding, grazing or herding any domestic animals, whether in pasture or otherwise, shall have a lien on said animals for the amount due for such feeding, grazing or herding.

"176. Any person, partnership, firm or corporation in this state, or in any border county of the adjacent states, furnishing or providing to the owner of such domestic animals any corn, feed, forage or hay, for the sustenance of such domestic animals, shall have a lien on said animals for the amount due for such corn, forage, feed and hay."

The court below decided this question in favor of Mr. Hoff, whereupon this proceeding in error was commenced by the bank for the purpose of reviewing the action of the trial court.

The facts out of which it is claimed the lien arises may be summarized briefly as follows: Hoff, the defendant in error, who was an experienced cowboy and cattleman by trade or calling, was employed by McDaniel, the owner of the cattle, to take charge of a ranch of about 1,900 acres upon which the cattle were to be herded and cared for, the former to receive wages at the rate of $60 per month. The agreement was not specific in defining the scope of Mr. Hoff's duties in the premises, but as there was no fault found by any of the parties with what he did in relation to the cattle, we will assume that what he did was within the implied scope of his general employment to take charge of the ranch and feed and herd the cattle placed thereon. At the time Hoff took charge of the ranch McDaniel was the owner of several head of cattle involved, and subsequently he purchased other cattle and placed them with the herd on the ranch. After the cattle were turned over to Hoff he took general charge and care of them, meeting such emergencies as arose in the business, and providing feed and shelter for the cattle as required. McDaniel, the owner, lived in Pontotoc county across the Canadian river, a distance of 23 or 24 miles from the ranch, and did not visit the same more than

twice from April, 1913, to January, 1914, during the time Hoff had charge thereof. In the month of August, while Hoff was still in charge, fire broke out on the ranch, and burned up all the grass, and thereafter the cattle were herded by Hoff on open range with the knowledge of McDaniel. The mortgage executed by the plaintiff in error herein was made by McDaniel in June, 1913, several months after Hoff took charge of the herd. and purported to cover all the cattle in his charge. At the time this mortgage was executed Mr. Estill, president of the mortgagee bank, asked Mr. McDaniel if the cattle were in charge of a good man, and Mr. McDaniel told the president that the cattle were and would remain in charge of Mr. Hoff, who was an experienced cattleman and cowboy. During the fall and winter grazing upon the ranch became short, and, Mr. McDaniel making no adequate provision for paying for or procuring feed for the herd elsewhere, Mr. Hoff performed these duties, and during this time, from about October or November, until January, when the cattle were taken by the bank, he had several conversations with the officials of the bank as to ways and means of protecting. caring for, and feeding the cattle. In January, Mr. McDaniel still neglecting to provide for feeding and caring for the herd, or to meet the obligation of the bank, the cattle were taken in replevin by the bank, with the result hereinbefore stated.

Counsel for plaintiff in error present their grounds for reversal in some 14 or 15 assignments of error, but in their brief they say:

"The underlying principle in support of all these assignments of error is this: That under the undisputed evidence in this case the defendant B. G. Hoff was not an agister, but a hired hand, and, as such has no lien upon the cattle involved in this action."

They further say:

"Possession being the basis of such lien, it necessarily follows that a servant whose custody of property is only the possession of his master cannot claim a lien."

In support of the contention thus stated they cite Boston & Kansas City Cattle Loan Co. v. Dickson, 11 Okla. 680, 69 Pac. 889, and several cases of the same class from other states. As neither of the sections of the statute construed in the cases relied upon are similar to the sections now under consideration, viz., sections 175 and 176, supra, this case is not ruled by cases of that class. We think the uncontradicted evidence shows that Mr. Hoff is entitled to the lien he claims under the statutes invoked by him. Clearly Mr. Hoff was a person employed in feeding, grazing, and herding domestic animals, within the meaning of section 175, supra, and he was also a person who furnished or provided to the owner of domestic animals corn, feed, forage, or hay for their sustenance under section 176. In both of these capacities he is entitled to a lien. Under the first section the lien is for the amount due him for his personal services in feeding, grazing, and herding the cattle, and under the second section for the amount due him for providing for the owner of such domestic animals feed, forage, hay, etc. In Lytell v. Bank, 65 Or. 243, 132 Pac. 518, a statute not dissimilar to our section 175, entitled "An act giving herders a lien on animals herded" was under discussion. The court, after a full discussion of the decisions, construing statutes giving liens to agisters and their class, among them Boston & Kansas City Cattle Loan Co. v. Dickson, supra, held that:

"L. O. L. 7484, 7485, declaring that any herder of sheep, or any one to whom they are intrusted for care and attention, under contract therefor with their owner, has thereon a possessory lien for the amount due. on the contract, and may retain possession of them till it is paid, not professing to amend sections 7451, 7452, giving a lien to 'any person who shall pasture or feed any live stock, or bestow any labor, care or attention on the same at the request of the owner,' but passed by the Legislature next after a decision that they gave a lien to agisters only, and not to servants of the owner, will be construed as a remedial statute, and, in view of the mischief to be remedied to give a lien to a herder for wages, though he is not strictly in possession of the animals for which he cares, it being intended he may retain custody of them until his wages are paid."

The lien provided for by our statute is not designated a possessory lien, as in Oregon, nor is it, by the terms of the statute, dependent upon possession. In these circumstances, we have no doubt that such possession as persons employed in feeding grazing, or herding domestic animals ordinarily have of the herds intrusted to their care by the owner is sufficient to create a lien in their favor under the statute, which is remedial in its nature, and therefore should be construed in favor of the class for whose protection it was enacted.

There is some further contention on the part of counsel for plaintiff in error that, even though it be held that the statute is sufficient to include a hired hand, or that Hoff was an agister, it will be found from the authorities that the mortgage lien of the bank takes precedence over the lien of Hoff.

The rule in this jurisdiction is stated in Bank v. Wilson, 49 Okla. 370, 153 Pac. 172, as follows:

"The lien of a valid recorded chattel mortgage will take precedence over the subsequently acquired lien of a person furnishing feed to the owners of the animals embraced in said mortgage, unless such feed was furnished to the owner with the consent of the mortgagee. The lien of a person who furnishes feed to the owner of certain animals with the knowledge and consent of a mortgagee is superior to the lien of said mortgage, although furnished after the filing thereof."

If Hoff is placed upon a common plane with other lienholders, the first in the order of time to have superiority, we find that at the time of the execution of the chattel mortgage to the bank the lien of Mr. Hoff had been attached to a considerable number of the herd for several months. In these circumstances, the subsequent chattel mortgage of the bank would not have the effect of displacing the lien of Mr. Hoff which had previously attached to the part of the herd which had been in his possession for several months. Moreover, the bank knew that all the cattle were in the charge of Mr. Hoff as a herder, and there was testimony to the effect that after the grazing had commenced to become short on the range in the fall, the bank officials told Hoff to go ahead and buy fodder and take care of the cattle and the bank would see him through. This, too, with full knowledge on the part of the bank that Hoff was spending his own money for the purpose of keeping the herd in good condition. Of course, as it turned out, all of this redounded to the benefit of the mortgagee, who, it seems, was the only one who profited by Mr. Hoff's labor and effort to feed and care for the cattle under very trying circumstances; Mr. McDaniel seeming to have ignored his duty almost entirely toward the mortgagee, as well as toward his employe.

For the reasons stated, the judgment of the court below is affirmed.

All the Justices concur.