W. G. MEAD, Appellant, v. HERMAN BOCKORNY and Mike Kukk, Respondents.

(191 N. W. 626.)

**Animals — herder's lien sustained.**

> Under the laws of South Dakota and North Dakota (S. D. Rev. Codes 1919, §§ 1669, 1670; N. D. Comp. Laws 1913, §§ 6844, 6845), a person who is employed to herd and care for sheep at a monthly wage is entitled to a herder's lien, as against the owner who consented to such employment, upon the sheep so placed under his care and in his custody.

Opinion filed December 15, 1922. Rehearing denied December 30, 1922.

Animals, 3 C. J. § 63 p. 34 n. 82.

Appeal from the District Court of Adams County, *Lembke*, J.

Plaintiff appeals from a judgment and from an order denying his motion for judgment notwithstanding the verdict or for a new trial.

Affirmed.

*P. B. Garberg*, and *W. F. Corrigan*, for appellant.

*F. M. Jackson*, for respondents.

CHRISTIANSON, J. This is an action in claim and delivery to recover the possession of a flock of sheep. Plaintiff asserts that he is the owner and entitled to possession as such. The defendants claim to have a lien for moneys due them for herding the sheep. The jury returned a verdict in favor of the defendants. The plaintiff moved for judgment

NOTE.—On excessiveness of verdicts in action for personal injuries other than death, see note in L.R.A.1915F, 30.

notwithstanding the verdict or for a new trial. The motion was denied, and plaintiff appeals.

Did the defendants have a lien on the sheep for the amount due them for herding? That is the sole question argued on this appeal.

If such lien exists it is by virtue of the following statutory provisions:

"Any farmer, ranchman, or herder of cattle, innkeeper or livery stable keeper to whom any horses, mules, cattle, or sheep shall be intrusted for the purpose of feeding, herding, pasturing, or ranching shall have a lien thereon for the amount that may be due for such feeding, herding, pasturing, and ranching and shall be authorized to retain possession of the same until the said amount is paid; provided, that these provisions shall not be construed to apply to stolen stock." S. D. Rev. Codes 1919, § 1669; N. D. Comp. Laws 1913, § 6844.

"The provisions of this article shall not be construed to give any farmer, ranchman, or herder of cattle, innkeeper or livery stable keeper, any lien upon horses, mules, cattle, or sheep, put into their keeping for the purpose mentioned in the previous section, when said property was not owned by the person intrusting the same at the time of delivering them into the possession of said farmer, ranchman, herder, innkeeper, or livery stable keeper." S. D. Rev. Codes 1919, § 1670; N. D. Comp. Laws, 1913, § 6845.

In October, 1919, the plaintiff agreed to deliver a certain number of sheep to one Stubbert upon what is termed a "share plan." The agreement was subsequently reduced to writing, and was executed by the parties in February, 1920. By the terms of the agreement each of the parties was obligated to pay one half of the shearing, one half of the salt and grain used in feeding the sheep, and one half of the taxes on the sheep. The wool and lambs were to be divided equally between the plaintiff and Stubbert. Stubbert was to pay all the running expenses, except as stated above, and he agreed to deliver all lambs and sheep coming to the plaintiff at the termination of the agreement for shipment f. o. b. cars at a shipping point. The plaintiff agreed to stand 5 per cent loss on the sheep during the life of the lease, and in case the loss exceeded 5 per cent, Stubbert was to deliver to Mead a number of ewe lambs equal to the loss so assumed by him (Stubbert) on or before October 1, 1920.

It appears that the plaintiff desired that the defendant Bockorny,

should be employed to herd and care for the sheep. He stated to Stubbert that he (Bockorny) would be a cheap man at $150 per month, and suggested that if necessary he be admitted into some sort of partnership arrangement. In a letter written by the plaintiff to Stubbert in the early part of January, 1920, he said: "Had Herman (Bockorny) been herding he would have noticed the lambs failing or losing flesh, in fact if he had been herding they wouldn't have lost flesh. Nor would he have let the bucks in as Mark did and if he had he would have got them out, besides he would have fed the sheep in the blizzard and not lost so many. That's the difference between a man who knows and a man who doesn't know."

Stubbert entered into negotiations with Bockorny with the result that Bockorny was engaged to herd, feed, and care for the sheep at $100 per month. Bockorny went to work about January 5, 1920, and continued in active charge of the sheep as herder and caretaker until about October 1, 1920, viz. until the commencement of this action. It is apparent that the plaintiff was notified of defendant's employment, for on January 28, 1920, he (plaintiff) wrote the defendant Bockorny, a letter, wherein he said: "I am real glad you are back on your old camping ground once more. I feel the sheep are in good hands when you have them. . . . I hope you will stay all winter and summer. I think you have a better job than farming for your position is sure. . . . I want you to take most of the ewes to the Galvin ranch in the spring to lamb and then in June take the balance of the ewes down there and save our range for winter and late fall." The evidence discloses that these instructions given by the plaintiff were carried out by the defendant Bockorny. The plaintiff visited the ranch in February, 1920, but did not see the defendant Bockorny as he was out on the range caring for the sheep. In May 1920, the plaintiff again visited the ranch and inspected a herd of sheep and lambs that were in charge of the defendant Kukk and expressed himself as satisfied with his work and when leaving he told him to save all the lambs he could for "us," apparently meaning plaintiff and Stubbert. In July 1920, the plaintiff again visited the ranch and talked with the defendant Bockorny and counted all the sheep. At that time plaintiff was informed by Bockorny that his wages had not been paid. At that time plaintiff gave Bockorny $15 in cash, which the plaintiff in his testimony claimed he advanced

as a loan while the defendant Bockorny testified he received it as a payment on his wages. According to the testimony of Bockorny he then informed the plaintiff that there was no need of his returning to work if he could not get his wages paid, whereupon the plaintiff stated that he would see that he was paid. This, however, is denied by the plaintiff.

The defendant Kukk went to work in May 1920, at an agreed wage of $75 per month and he and the defendant Bockorny from that time on cared for the sheep together. The plaintiff knew that Kukk as well as Bockorny was working and caring for the sheep, because, as already indicated, he visited the ranch in May 1920, and examined the band in charge of Kukk. In October 1920, the plaintiff came and directed the defendants to drive the sheep to Hettinger, North Dakota, which they did. At that point the plaintiff desired to put them on board cars and ship them to Melette, South Dakota. The defendants refused to surrender the sheep until the amount due them was paid. The plaintiff refused to pay and brought this action in claim and delivery.

Do these facts bring the defendants within the above-quoted statutory provisions? In other words were the defendants "herders" to whom the sheep in controversy were intrusted, by or with the consent of the owner, for the purpose of feeding, herding, or pasturing within the purview of the statute? Both parties agree that that is the ultimate question presented for determination. Plaintiff contends that the statute grants a lien only where the animals on which a lien is claimed have been placed in the actual and legal possession of the lien claimant; and that a person who herds and cares for stock as a servant of the plaintiff for hire and is subject to the directions of the master is not entitled to a lien. In support of this contention he cites: Hooker v. McAllister, 12 Wash. 46, 40 Pac. 617; Underwood v. Birdsell, 6 Mont. 142, 9 Pac. 922; Thomas v. Mann, 22 Wyo. 99, 135 Pac. 1088; McDearmid v. Foster, 14 Or. 417, 12 Pac. 813; Wenz v. McBride, 20 Colo. 195, 36 Pac. 1105; King v. Indian Orchard Canal Co. 11 Cush. 231; Bailey v. Davis, 19 Or. 217, 23 Pac. 881; 3 C. J. p. 33, § 61. The defendants, on the other hand, contend that the statute applies not only under the conditions outlined by the plaintiff, but, also, in cases like the one here, where a person is employed for the sole and express purpose of herding, feeding, and caring for certain live stock at a monthly wage; and where such live stock, though subject to the owner's orders and

directions and not in a strict, legal sense in the possession of the herder, nevertheless is in his custody and under his care. In support of this contention defendants' counsel cites Lydell v. First Bank, 65 Or. 243, 132 Pac. 518; National Bank v. McDaniel, 71 Okla. 6, 174 Pac. 286; and Becker v. Brown, 65 Neb. 264, 91 N. W. 178. While the authorities cited by these parties are interesting and illuminating on the questions there considered, the question before us after all is one of legislative intention, for not one of the authorities cited deals with a statute identical with our own, and many of the statutes considered are quite dissimilar.

We have given the matter careful consideration, and while the writer of this opinion is inclined to the view that the statute does not apply in this case, a majority of the court are of the opinion that the statute does apply here, and that the defendants are entitled to claim a lien and have a lien for the amount due them for herding the sheep.

The judgment and order appealed from must therefore be affirmed. It is so ordered.

BIRDZELL, Ch. J., and ROBINSON and GRACE, JJ., concur.

BRONSON, J., concurs in result.