## NATIONAL BANK OF REPUBLIC OF SALT LAKE CITY v. DRULAS et al.

No. 3877.   Decided March 23, 1923.   (214 Pac. 24.)

1. ANIMALS—SERVANT NOT ENTITLED TO HERDER'S LIEN.  A mere servant, hired by the month to herd sheep under the directions of the owner furnishing the range and feed, does not have the possession necessary to support the lien created by Comp. Laws 1917, § 3771, in favor of herders to whom any sheep shall have been intrusted for the purpose of herding, who are authorized to retain possession until the amount due is paid, with the right to the remedy provided by section 3774 for the enforcement of the lien by foreclosure by advertisement, and therefore he has no lien for his services.[1]

2. CHATTEL MORTGAGES—AGISTERS' LIEN TO BE AVAILABLE AGAINST MORTGAGEE OF HERDED SHEEP MUST BE IN NATURE OF PLEDGE WITH COMPLETE POSSESSION.  An agreement for a herders' lien, as given by Comp. Laws 1917, § 3771, to be effective as against a chattel mortgagee of the herded sheep must have been in the nature of a pledge of the property, and to support the pledge the pledgee must have clear, complete, and effective possession at all times, so as to give notice to third parties of the pledgee's rights.

Appeal from District Court, Third District, Salt Lake County; *A. R. Barnes*, Judge.

Action by the National Bank of the Republic of Salt Lake

---

[1] *Morgan* v. *Layton*, 60 Utah, 280, 208 Pac. 505.

City against Stephen Drulas and another. Judgment for plaintiff, and defendants appeal.

AFFIRMED.

*H. L. Mulliner,* of Salt Lake City, for appellants.

*Straup, Nibley & Leatherwood,* of Salt Lake City, for respondent.

CHERRY, J.

Plaintiff, claiming title under a chattel mortgage executed by T. A. Butterfield and subsequent foreclosure proceedings, sued defendants in claim and delivery to recover possession of a band of sheep. The defendants, to support their right to the possession of the property, set up a claim of lien for herding the sheep for Butterfield. Plaintiff had judgment, from which defendants appeal.

The principal controversy is whether, under the law of this state, the defendants have a lien for their services upon the animals sued for.

The assignments of error upon this subject are that the evidence is sufficient to justify the judgment; that the judgment is against law; that the court erred in not finding that the defendants had a lien upon the sheep, and in not entering a judgment for defendants.

Considerable evidence was introduced relative to the particular nature, terms, and conditions of the defendants' employment by Butterfield, and of the particular conduct of the parties in pursuance thereof, from which the trial court made the following finding of fact:

"3. That on April 6, 1919, the said defendant Stephen Drulas,, and on or about the 1st day of January, 1921, the said defendant Louis Gialiotes, were employed by the said T. A. Butterfield as a herder and camp tender to herd the said sheep of the said T. A. Butterfield, so mortgaged to the plaintiff as aforesaid, including the said sheep herein described in plaintiff's complaint, which said employment continued until about the 5th day of December, 1921.

That at the commencement of these proceedings for such services there was due to and unpaid the said Stephen Drulas from the said T. A. Butterfield the sum of $1,710, and to the said Louis Gialiotes the sum of $534.35. That the employment of the said defendants by the said Butterfield was only that of an ordinary herder and camp tender to herd and tend the said sheep of the said Butterfield. That the said Butterfield furnished and provided the pasturage and all feed of the said sheep, and all supplies in connection therewith and with the herding and caring for said sheep, and, as the owner of them, he directed and controlled where the said sheep should be ranged, taken, and kept, and as the owner had the possession of the said sheep during all the time of the said employment of the said defendants, or either of them. That the said defendants were employed by the month, to be paid an agreed and stipulated sum per month, and under the terms of the employment the said Butterfield had the right to discharge them or either of them at any time, and to dismiss them or either of them from his service at his pleasure, and that the said defendants did not, nor did either of them, furnish or supply any feed or pasturage or supplies of any kind whatsoever for the said sheep, nor under the terms of the employment were they or either of them required so to do. To the contrary, the said Butterfield exercised all right of control and possession of the said sheep as any owner could do, and furnished all feed and supplies and boarded the said defendants. Under the terms of the employment, neither of the said defendants were liable or held responsible for the loss or destruction or trespass of the said sheep, and that the relation of the said Butterfield to and between the said defendants and each of them was merely of master and servant or employer and employee."

This finding is not assailed on this appeal, although the argument of appellants proceeds upon the claim that the sheep in question were intrusted to the defendants within the meaning of the statute hereinafter referred to. Mr. Butterfield, who testified in detail concerning his relationship with defendants, said, with reference to defendant Drulas, "I told him I would hold him responsible, and I put him as a kind of foreman in charge of the sheep and held him responsible," and, "I left the thing entirely when I wasn't there up to Mr. Drulas and held him responsible for the handling of those sheep," and, "after he had been with me longer, and I was convinced he was capable of taking care of them, I naturally put them into his charge, and intrusted them to him more than I did when he started."

The relationship of the parties is not to be determined from the foregoing statements alone. Butterfield further testified that he hired Drulas to herd his sheep at a monthly salary, under his direction and subject to his orders; that he had the right to discharge him at will; that he ran the business, gave the orders, provided the range and feed, furnished the camp, directed the movements of the sheep and the men in charge, took sheep out and sold them, sold the wool, all without permission from Drulas, visited the sheep three or four times each season; and that he had the right to take the sheep away from Drulas at any time.

The defendant Gialiotes was the camp tender, and occupied a much more subservient position. Indeed, his right to a lien cannot be seriously urged. The finding of fact by the court above quoted is amply supported by the evidence, and it presents the ultimate facts upon which the claim of lien depends.

Appellants complain that the court failed to make a finding of fact upon the allegation in their counterclaim that the sheep were intrusted to defendants, etc. This matter was properly disposed of as a conclusion of law, wherein the court found that the sheep were not intrusted to defendants within the meaning of the statute. Comp. Laws Utah 1917, § 3771, is as follows:

"Any ranchman, farmer, agister, or herder of cattle, tavern keeper, or livery stable keeper, to whom any horses, mules, cattle, sheep, or asses shall be intrusted for the purpose of feeding, herding, pasturing, or ranching, shall have a lien upon such animals for the amount that may be due him for such feeding, herding, pasturing, or ranching, and shall be authorized to retain possession of such animals until the said amount is paid."

The statute limits the lien to certain specified persons "to whom any * * * sheep shall be intrusted for the purpose of * * * herding," who are authorized to "retain possession of such animals until the said amount is paid."

The clear import is that the lien is dependent upon possession. The remedy provided by Comp. Laws Utah 1917, § 3774, for the enforcement of the lien is foreclosure by advertisement, upon the notice and in the manner provided for

the foreclosure of mortgages on personal property. This remedy cannot be pursued without possession of the property impressed by the lien. *Morgan* v. *Layton*, 60 Utah 280, 208 Pac. 505. The gist of the question is the quality of the possession of the lien claimant requisite to come within the reach of the statute. The rule in 3 C. J. 33, § 61, is stated as follows:

"It is essential to the attachment of the statutory lien that the agister should have possession and control of the animals. The possession necessary to entitle the party to a lien must be such as to give the party, for the time, the exclusive care, control, and direction of the property, and must be more than that of a mere servant for hire from day to day or month to month, who is subject to the direction and orders of the master; but such possession need not be continuous and uninterrupted."

In *Auld* v. *Travis*, 5 Colo. App. 535, 39 Pac. 357, it is said:

"The lien is for the food and care expended upon the cattle of another, where the cattle are intrusted to his care. They must be delivered into his possession and subject to his control and the bailment is such, and his possession so exclusive, that he may maintain trespass or trover against a wrongdoer for any injury to their possession."

In *McKee Live Stock Co.* v. *Menzel*, 70 Colo. 308, 201 Pac. 52, a lien for services for keeping and feeding cattle was denied under a statute substantially the same as in this state, upon the grounds that exclusive possession is essential to support the lien, and that the lien does not extend to a mere hired servant of the owner.

In *Hooker* v. *McAllister*, 12 Wash. 46, 40 Pac. 617, a statute providing that "any farmer, ranchman, herder of cattle, tavern keeper, livery and boarding stable keeper to whom any horses, mules, cattle, or sheep shall be intrusted for the purpose of feeding, herding, pasturing, training, caring for or ranching, shall have a lien upon said horses, mules, etc., for such feeding, herding, pasturing, etc., and shall be authorized to retain possession of such property until the amount is paid," was held to authorize a lien only in favor of those persons described in the statute to whom is intrusted the possession and control of the property mentioned, and

who become responsible for it; and does not extend to persons merely hired by the month or day to herd sheep or cattle of any kind, where the possession remains in the owner, and where the owner is responsible for such cattle. See, also, *Underwood* v. *Birdsell*, 6 Mont. 142, 9 Pac. 922.

In *Bailey* v. *Davis*, 19 Or. 217, 23 Pac. 881, in denying a lien claimed by a servant, under a statute, for pasturing and feeding cattle, it is held that, while the relation of master and servant exists, the servant can have no separate or independent possession of the property, and hence cannot acquire a lien.

In *Mendilie* v. *Snell*, 22 Idaho, 663, 127 Pac. 550, 42 L. R. A. (N. S.) 731, and in *Boston & K. C. Cattle Loan Co.* v. *Dickson*, 11 Okl. 680, 69 Pac. 889, similar statutes are construed and the conclusion reached that exclusive possession is necessary to support the lien, and that a mere servant for hire cannot have possession independent of his master. To the same general effect is *Skinner* v. *Caughey*, 64 Min. 375, 67 N. W. 203.

But appellants contend that the conclusions reached by the foregoing authorities are overborne by the following cases, upon which reliance is placed for a reversal of the judgment appealed from, viz.: *Lydell* v. *First Bank of Joseph*, 65 Or. 243, 132 Pac. 518; *Becker* v. *Brown*, 65 Neb. 264, 91 N. W. 178; *Nat. Bank of Commerce* v. *McDaniel*, (Okl. Sup.) 174 Pac. 286. In our view these cases are readily distinguishable from the case now under consideration.

In *Lydell* v. *First Bank of Joseph*, supra, which is the principal case relied upon by appellants, a lien is upheld under a special statute, which the court holds was passed under such circumstances and in such terms as to extend the lien to a herder of sheep working for wages. The decision is contrary to the result formerly reached by the same court in the case of *Bailey* v. *Davis*, supra, and is based upon a new statute entitled "An act giving herders a lien upon animals herded," passed in the meantime. After referring to the statute construed and the rule announced in *Bailey* v. *Davis*, supra, the court says:

"The next Legislature met in January, 1893, and passed the act in question. It does not profess to be an amendment of the previous act, which is still in force, and the conclusion is irresistible that it was passed with a view to correct the mischief pointed out in *Bailey* v. *Davis,* supra, and to give the herder working for wages the remedy which that decision announced he did not have under the preceding statute."

The essential difference between the Utah statute here under consideration and the Oregon statute last construed is that the former limits the lien to specified persons "to whom any * * * sheep, * * * shall be intrusted for the purpose of * * * herding," etc., while the latter extends the lien also to "any herder of sheep," thus evincing an intention to relax the quality of possession requisite to the lien. In *Becker* v. *Brown,* supra, the lien is upheld as an agister's lien under a bailment, and no question of the character or quality of possession when the lien attached is involved or decided. In *Nat. Bank of Commerce* v. *McDaniel,* supra, a lien is upheld in favor of a herder of cattle employed for that purpose under a statute which does not require possession to support the lien.

It is thus seen that there is a very general agreement of judicial opinion to the effect that the lien created by the statute under consideration is dependent upon effective possession, and that a mere servant, by virtue of his relationship to his master, cannot have the quality of possession required and therefore can have no lien.

It is argued that if the statute does not provide for a lien in the circumstances here presented, that the words "herder of cattle" and "for the purpose of herding," used in the statute, are vain and meaningless and not useful in any case. Not so. It does not follow from this decision that the lien is strictly limited to a technical agistment, or to persons taking cattle on their own land at a certain rate. The not uncommon practice in this state of letting sheep out "on herd bill," to use the vernacular of the business, where owners of sheep, usually several, who each own a small number, deliver them to a herder, who undertakes on his own account to herd them on the public range or elsewhere, for a stated

period, for reward, and who has the exclusive possession, control, and management of and is responsible for them, during the time, furnishes a type of case to which the words of the statute above quoted would apply. The trial court correctly applied the law to the facts in this case and properly denied the claim of lien.

Appellants assign as error the refusal of the trial court to admit evidence of an oral agreement between defendants and Butterfield by which defendants were given a lien upon the sheep.

An agreement for a lien, under the circumstances, to be effective as against the plaintiff, must have been in the nature of a pledge of the property, and to support a    2
pledge the pledgee must have clear unequivocal, complete, and effective possession at all times, so as to give notice to third parties of the pledgee's rights. 30 Cyc. 801.

As heretofore shown, the defendants had no such possession of the sheep, and any oral agreement with Butterfield for a lien would for that reason have been of no legal consequence as against the plaintiff. No error was committed by the trial judge in refusing to admit the evidence offered.

At the trial the respective priorities of the plaintiff's title and the defendants' lien was a subject of controversy, and the trial court made findings thereon in favor of the plaintiff. The question has been presented and argued on this appeal, but, in view of our conclusion denying the defendants' lien. the question of priorities becomes wholly unimportant.

Judgment affirmed, with costs.

WEBER, C. J.; and GIDEON, THURMAN; and FRICK, JJ., concur.