ERNEST HOERLER, APPELLEE, V. A. G. PREY ET AL., APPELLANTS.

FILED JANUARY 19, 1934. No. 28735.

*Mothersead & York,* for appellants.

*Neighbors & Coulter, contra.*

Heard before GOOD, EBERLY and DAY, JJ., and CHAPPELL and LANDIS, District Judges.

LANDIS, District Judge.

This is a proceeding wherein Ernest Hoerler, plaintiff below, appellee here, obtained a decree against the First National Bank of Grand Island, Nebraska, and A. G. Prey, defendants below and appellants here.

The decree appealed to this court separately by the appellants adjudges appellee to have a valid and superior agister's lien, that appellants have no interest in, lien upon or right and title to the sum of $1,142.35 received

from the proceeds of the sale of steers and that appellants either pay into court for the benefit of the appellee said proceeds or appellee have and recover judgment therefor.

The record reflects without dispute that appellee contracted in writing with S. E. Dennis to fatten 56 head of steers. The compensation for fattening was to depend upon the weight gained. The contract contemplated that the cattle should be fed until fat and the market conditions warranted their sale. Among its provisions are that a change of time in the feeding period should be evidenced in writing, and that appellee would furnish the feed "necessary to fatten for a period of 120 days or more." Appellee fed the cattle through the 120-day period and continued thereafter to do so at the request of Dennis, but required him to advance money to buy additional feed, which was done.

A. G. Prey secured by indorsement and assignment from Dennis a note and chattel on these cattle. Prey in turn indorsed the note and chattel to the First National Bank of Grand Island. The note and mortgage were executed subsequent to appellee's contract and receipt of the cattle for feeding. Appellee had neither actual nor constructive notice of the mortgage until quite some time after he had possession of the cattle under his contract. Both Prey and the bank knew that appellee was feeding the cattle covered by the chattel mortgage on a gain basis. Dennis ordered the cattle sold at Chicago. Appellee accompanied them to Chicago where the commission company sold them on open market June 4, 1931, for the net sum of $4,707.85. Dennis, the shipper, sent along structions to pay him for the amount due thereunder. Prey instructed the commission company that all the proceeds should go to the bank on the mortgage. The commission company remitted $3,565.50 of the proceeds of the sale to the bank and held $1,142.35 due appellee. At the instance of Prey a bond was furnished the commission company to hold them harmless and then the $1,- a copy of his feeding contract with appellee, with in-

142.35 was remitted to the bank. Both Prey and the bank knew that appellee was claiming this money under his feeding contract before it was turned over to them, made demand therefor and took affirmative action to obtain such proceeds. The bank actually got the money from the commission company, credited Prey's account therewith and subsequently applied same on Prey's indebtedness to it.

The question of jurisdiction is properly raised and preserved in the record. The only service of process had on the defendant First National Bank was by service of copy of summons in Hall county, Nebraska. The jurisdiction over the bank depends upon the stating and proving of a cause of action against appellant Prey. The rule is declared in *Morearty v. Strunk,* 118 Neb. 718: "The authority of plaintiff to summon a defendant in a county other than the one in which the action is brought depends on plaintiff's right to recover judgment against a resident defendant or a defendant served with summons in the county of the forum." The petition states a cause of action in conversion against appellants. Prey and the bank participated in the conversion of the fund due appellee under his agister's lien. Both of them, with knowledge, benefited by the money. The bank got the money. Prey received credit for it on his indebtedness to the bank. Under the law both the bank and Prey were liable as principals in conversion. "In wrongful conversion, each and all knowingly participating therein, or who, with knowledge, benefit by its proceeds in whole or in part, are principals." *Talich v. Marvel,* 115 Neb. 255. Appellee pleaded and proved a joint liability against appellants, hence there was jurisdiction obtained in Morrill county over the bank.

Appellants make no complaint as to the validity of appellee's agister's lien, but claim that it is inferior to the assigned chattel mortgage held by the bank. Priority for the chattel mortgage is grounded upon there being an extension of time of feeding. The cattle were fed

more than 120 days, and appellants insist that the additional period was pursuant to a new contract. This change in time was not evidenced in writing, but that provision of the contract would obtain between the parties to the contract and is not material to the appellants.

The feeding contract contemplated an extension or decrease of the feeding period, and that the cattle should be fed until fat and the market conditions warranted their sale. Appellants frankly state they have found no authorities on agister's lien to sustain their contention. During the 120-day feeding period appellee's agister's lien had priority; nothing occurred thereafter to divest him thereof, and at the time of the conversion such priority still obtained.

The statute creating an agister's lien is remedial in its nature and should be liberally construed. It is not, as between the parties or third persons having notice thereof, lost by change of possession not inconsistent with it, and where there are no circumstances indicating an intent to waive, relinquish or abandon it. *Becker v. Brown*, 65 Neb. 264.

There is no question of fact to submit to a jury under this record. No conflict in the testimony appears; only questions of law for the court to determine. A verdict would have had to be directed for the appellee. Hence, there was no prejudicial error in denying a jury trial.

The decree entered by the trial court is the only one which could have been legally entered herein; is right, and is, as to each appellant,

AFFIRMED.