WASHINGTON COUNTY BANK, A NEBRASKA BANKING CORPORATION, APPELLEE, V. RED SOCKS STABLES, INC., ET AL., APPELLEES, REGENCY THOROUGHBRED FARMS, INC., INTERVENOR-APPELLANT.

376 N.W.2d 782

Filed November 22, 1985.   No. 84-921.

Daniel J. Duffy and David A. Blagg of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Gregory P. Drew, for appellee Washington County Bank.

William B. Brandt and Robert J. Hallstrom of Brandt, Horan, Hallstrom & Sedlacek, for amicus curiae Nebraska Bankers Association.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.
On December 29, 1982, Red Socks Stables, Inc. (hereinafter

Red Socks), executed a promissory note promising to repay to Washington County Bank (hereinafter Bank) the sum of $270,000. On the same date, Red Socks executed a security agreement and a supplemental security agreement granting the Bank a security interest in, inter alia, "All thoroughbred horses, including all thoroughbreds now owned or hereafter acquired by Red Socks Stables, Inc. . . . ." On or about December 30, 1982, the Bank perfected its security interest in the thoroughbreds by filing a financing statement with the Secretary of State and with the county clerk of Saunders County, where the chief executive office of Red Socks was located. On August 18, 1983, Judy C., Blue Maze, and Pal, among the horses specifically named in the supplemental security agreement, were delivered by Red Socks to Regency Thoroughbred Farm, Inc., which later became known as Regency Thoroughbred Farms, Inc. (hereinafter Regency), for care and feeding at Regency's operation in Sarpy County at an agreed price of $7 per day per horse. Regency cared for the thoroughbreds through September 15, 1984, at a total cost of $7,583.50.

Red Socks defaulted on its note. The Bank obtained a default judgment in the amount of $294,658.77 against Red Socks on August 13, 1984, in Washington County District Court. The Sarpy County sheriff took possession of the thoroughbreds pursuant to a writ of execution issued out of the Washington County District Court. When the sheriff took possession of the horses on September 15, 1984, Regency informed the sheriff that it had an agister's lien. On September 19, 1984, Regency filed an "Affidavit Concerning Agister's Lien" with the county clerk of Sarpy County.

Following the procedures set out in Neb. Rev. Stat. § 25-1521 (Reissue 1979), the matter of the priority of the Bank's security interest and Regency's lien was submitted to the district court for Washington County. In an order dated November 12, 1984, the lower court held that the Bank, by reason of its perfected security interest, had priority over Regency's agister's lien. Regency timely appealed from that decision. We affirm.

By stipulation the parties agreed to the facts as set out above. In addition, the parties stipulated that the matter came before the district court for Washington County pursuant to Neb. Rev. Stat. §§ 25-1521 through 25-1523 (Reissue 1979) and that the Bank had never agreed in writing to the care and feeding of Red Socks' thoroughbreds by Regency. There is no dispute that the Bank, Red Socks, and Regency are all Nebraska corporations.

Regency assigns a single error: "The court erred in ruling that the perfected security interest held by Washington County Bank was prior to the agister's lien held by Regency . . . ."

Neb. U.C.C. § 9-310 (Reissue 1980) provides:

> When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.

Under this statute Regency's agister's lien would have priority over the Bank's perfected security interest unless the lien created by the agister's statute is statutory and "the statute expressly provides otherwise."

Neb. Rev. Stat. § 54-201 (Reissue 1984) creates the agister's lien. Such a lien is a "statutory lien" within the meaning of § 9-310 set out above. *Mousel v. Daringer*, 190 Neb. 77, 206 N.W.2d 579 (1973); *Becker v. Brown*, 65 Neb. 264, 91 N.W. 178 (1902). The remaining question is whether § 54-201 expressly provides "otherwise."

Subsection (1) of § 54-201 provides for agisters' liens where both contracting parties (the owner of the livestock and the agister) are Nebraska residents, as follows:

> When any person, firm, corporation, or partnership not provided for in subsection (2) of this section shall procure, contract with, or hire any other person to feed and take care of any kind of livestock, the person so procured, contracted with, or hired shall have a first, paramount, and prior lien upon such property for the feed and care bestowed by him or her upon the same for the contract price agreed upon . . . *as long as the holders of any prior liens shall have agreed in writing to the contract for the*

*feed and care of the livestock involved. . . .*
(Emphasis supplied.)

Subsection (2) of § 54-201 expressly provides for agisters' liens, where the agister furnishing services is a resident of Nebraska and the person or firm contracting for the services is a nonresident of Nebraska, as follows:

> When any person, firm, corporation, or partnership whose residence or principal place of business is located outside the State of Nebraska shall procure, contract with, or hire any other person, firm, corporation, or partnership within the State of Nebraska to feed and take care of any kind of livestock, the person so procured, contracted with, or hired shall have a first, paramount, and prior lien upon such property for the feed and care bestowed by him or her upon the same for the contract price agreed upon, and in case no price has been agreed upon, then for the reasonable value of such feed and care.
>
> . . .

Regency alleges that the language of § 54-201(1) and (2), stating that an agister shall have a "first, paramount, and prior lien," means that an agister's lien is a lien superior to other liens and not merely a prior lien if it is first in time. We do not so construe § 54-201. We hold that the priority referred to in both §§ 9-310 and 54-201 means priority in time of filing. Any other construction would not afford protection to liens or security interests filed first in time. The degree of protection afforded by a first lien often is the deciding factor in the determination of a security interest holder or a lienholder to render financial or other services to a property owner.

The different situations governed by § 54-201(1) and (2) are clearly delineated. Subsection (1) gives Nebraska agisters a first lien for services rendered to a Nebraska livestock owner *if* the holders of any prior liens on that livestock "shall have agreed in writing to the contract for the feed and care of the livestock involved." Subsection (2), on the other hand, gives Nebraska agisters a lien prior to any other liens, without any requirement that the holders of prior liens consent to the priority of the agister's lien, if the party contracting for the agister's services is a nonresident of Nebraska.

It is clear that the Legislature has set out a different priority

of liens based on whether the debtor who contracts with the agister is a resident or a nonresident of Nebraska. In this case the evidence is that Red Socks, the owner of the livestock, is a Nebraska corporation and that Regency, the agister, is also a resident of Nebraska. The evidence also establishes that the Bank's security interest in the livestock was perfected before Regency entered into its contract with Red Socks for the care and feeding of Judy C., Blue Maze, and Pal—the livestock in question. It is also a stipulated fact that the Bank did not agree in writing to Red Socks' contract with Regency.

We hold that a Nebraska agister's lien for services and care rendered to livestock owned by a Nebraska resident is not superior to a perfected security interest filed before the agister's lien, unless the security interest holder agrees in writing to the contract for the feed and care of the livestock involved.

The Bank's lien was prior to Regency's agister's lien. The ruling of the trial court establishing that priority was correct and is affirmed.

AFFIRMED.